MARTIN et al., Appellants,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, NORTH AMERICA, et al., Appellees.

[Cite as *Martin v. Gen. Motors Acceptance Corp., N. Am.,* 160 Ohio App.3d 19, 2005-Ohio-1349.]

Court of Appeals of Ohio, Seventh District, Mahoning County.

No. 04 MA 57.

Decided March 16, 2005.

20

Frank Brancatelli, for appellants.

Eliott Good, Van Shirey, A. Dustin Mets, and Darrell Dreher, for appellee General Motors Acceptance Corporation, North America.

David Barbee, for appellee Spartan Chevrolet.

VUKOVICH, Judge.

{¶ 1} Plaintiffs-appellants, Denver and Desiree Martin, appeal the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendant-appellee Spartan Chevrolet and partial summary judgment for defendant-appellee General Motors Acceptance Corporation, North America ("GMAC"). The first issue is whether the trial court erred in granting summary judgment for Spartan. The second issue is whether the trial court erred in granting summary judgment for GMAC. The final issue is whether the trial court erred in denying the Martins' motion to compel discovery. For the reasons stated below, the decision of the trial court is hereby affirmed.

## STATEMENT OF FACTS

{¶ 2} On February 9, 2001, Denver Martin, after visiting multiple dealers to obtain the best deal, signed a retail order for a 2001 Chevrolet extended-cab truck with Spartan, a car dealer. Martin wanted his payments to be roughly $400 per month, and he did not want to make a down payment. In order to make the sale, Spartan checked with multiple financing agencies to obtain the terms that Martin wanted. Ultimately, Spartan arranged the financing and terms through GMAC. Martin signed a promissory note and security agreement (collectively, "the note") with GMAC; he agreed to pay GMAC the sum of $28,185.30 in 66 equal monthly installments of $427.05.

{¶ 3} Martin subsequently failed to make the monthly payments. This default resulted in GMAC's repossessing the vehicle. While the vehicle was being repossessed, Martin chased the tow truck, a chase that resulted in a confrontation between him and the tow truck's driver and passenger.

{¶ 4} GMAC then notified Martin that pursuant to the note, he could redeem the truck if he paid GMAC the unpaid balance due, $18,070.46. Martin tried to redeem the truck by authorizing GMAC to withdraw $2,567.23 from his checking account to pay the deficiency on his loan. GMAC accepted the payment but did

not return the vehicle, as it was not the amount set forth by the note that was required for redemption.

{¶ 5} On September 17, 2002, Martin filed a compliant, which he amended on October 8, 2002. The complaint alleged that GMAC had breached the peace in repossessing the truck, that GMAC had violated R.C. 1345.01 et seq., the Ohio Consumer Sales Practices Act ("CSPA"), and R.C. 1317.12, the Retail Installment Sales Act ("RISA"), and that GMAC had intentionally inflicted emotional distress, and he sought a restraining order to prohibit GMAC from selling the truck at public sale.

{¶ 6} After the depositions of Denver Martin and Leonard Rodgers (an employee of GMAC) were taken, the parties began filing their motions for summary judgment. Spartan filed its motion for summary judgment, claiming that there was no genuine issue of material fact as to whether it had violated R.C. 1345.03 (unconscionable act) and that as a matter of law, summary judgment should be granted in its favor. Martin responded by filing a brief in opposition to Spartan's motion for summary judgment. Martin also filed a motion for partial summary judgment, claiming as a matter of law that the contract entered into between Martin and GMAC was a retail installment contract, that unconscionable acts had been committed in violation of R.C. 1345.03 by Spartan and GMAC, and that R.C. 1317.12 (the statutory redemption provision) was applicable and rendered the redemption terms of the note inapplicable. Spartan filed a response to Martin's motion for partial summary judgment. GMAC then filed a brief in opposition to Martin's motion for partial summary judgment. At the same time, it filed its own motion for partial summary judgment, claiming that GMAC had a security interest in the vehicle pursuant to R.C. Chapter 1309 and further claiming that no breach of peace had occurred during the repossession of the vehicle. Martin responded by filing a brief in opposition to GMAC's motion for partial summary judgment. Martin also moved for an order to compel GMAC to produce and permit Martin to inspect and copy the following:

{¶ 7} "1) copies of all financing agreements/promissory notes/security agreements signed by individuals in the State of Ohio from January 1, 2001 to present who have defaulted on the terms conditions of loans resulting in repossession of their vehicles;

{¶ 8} "2) copies of all letters sent to those individuals referred to in item 1 above who had their vehicles repossessed from January 1, 2001 to present, setting forth the terms and conditions in which they would be permitted to redeem their motor vehicle;"

{¶ 9} GMAC responded by filing a motion in opposition to the motion to compel. On March 2, 2004, the trial court ruled on the summary judgment motions and the motion to compel. The trial court granted Spartan's motion for

summary judgment, and it denied Martin's motion for partial summary judgment. It also granted in part and denied in part GMAC's motion for partial summary judgment. It granted summary judgment as to GMAC's establishment of a security interest in the truck; however, it denied summary judgment as it pertained to the breach of peace, stating that there was still a genuine issue of material fact as to whether a breach of peace had occurred. Last, the trial court denied the motion to compel discovery.

{¶ 10} Martin timely appeals from the trial court's grant of summary judgment, raising three assignments of error.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 11} "The trial court erred in granting Spartan Chevrolet's motion for summary judgment concluding that there had to be a physical or mental infirmity present at the time the agreement was signed and that the agreement was only between plaintiff and General Motors Acceptance Corporation, NA."

{¶ 12} The arguments made under this assignment of error are directed solely to the grant of summary judgment for Spartan. An appellate court conducts a de novo review of a trial court's decision to grant a motion for summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is properly granted where the moving party demonstrates that " '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 13} Martin contends that the trial court erred in concluding that given the facts and the law under R.C. 1345.03(B)(1) and (5), Spartan was entitled to summary judgment. Martin argues that R.C. 1345.03(B) applies to Spartan and that under subsections (1) and (5), Spartan acted unconscionably. Spartan counters by admitting that R.C. 1345.03 does apply to it; however, it contends that the undisputed facts and law do not support the conclusion that it committed an unconscionable act.

{¶ 14} R.C. 1345.03 states:

{¶ 15} "(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice

by a supplier violates this section whether it occurs before, during, or after the transaction.

{¶ 16} "(B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:

{¶ 17} "(1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interests because of his physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;

{¶ 18} "* * *

{¶ 19} "(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier."

{¶ 20} Spartan does not dispute that it is a supplier, that Martin is a consumer, and that a consumer transaction occurred between them. "Consumer transaction" is defined as the sale of a good to an individual for primarily personal, family, or household use. R.C. 1345.01(A). The "supplier" is the seller, and the "consumer" is the person who engages in a consumer transaction with a supplier. R.C. 1345.01(C) and (D). Spartan sold Martin a truck for his personal and family use. Thus, regardless of Spartan's concession, the statutory definitions for "supplier," "consumer," and "consumer transaction" indicate that Spartan is a "supplier" and Martin is a "consumer" and that a "consumer transaction" occurred. R.C. 1345.01(A), (C), and (D).

{¶ 21} Accordingly, R.C. 1345.03(B)(1) and (5) are applicable to Spartan. Under subsection (B)(1), the focus is on whether the consumer lacks the physical or mental ability to protect himself or herself. *Ford v. Brewer* (Dec. 9, 1986), 10th Dist. No. 86AP–626, 1986 WL 14259. Thus, if the evidence is undisputed that Martin had the ability to protect his interests, then the trial court did not commit error in granting summary judgment on the subsection (B)(1) claim.

■ {¶ 22} In an affidavit attached to his motion for partial summary judgment, Martin stated that he "did not read or understand the pre printed [sic] terms on the back of the [security] Agreement." First, his claim that he did not read the terms of the contract fails as a matter of law. Failure to read the terms of a contract is not a valid defense to enforcement of the contract. *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207.

{¶ 23} Next, regarding his claim that he did not understand the terms of the contract, even if we assume that this statement is true, his deposition testimony indicates that despite his alleged lack of understanding, he was still able to protect his interests. He testified that he went to several dealerships searching

for the best deal and that he went to Spartan more than once to talk about a deal on a truck.

{¶ 24} Additionally, he was asked the following:

{¶ 25} "Q. By the time you signed this document, you already had an understanding as to what the terms of your purchase from Spartan were, right?

{¶ 26} "A. No different than the same terms I made with the Blazer or any other vehicle, yes."[1]

{¶ 27} This testimony is an admission that he had previously negotiated purchases of automobiles, and one of them was from Spartan. The fact that he shopped around at other dealerships before purchasing this vehicle undermines any argument that he was unable to protect his interests. See *Henkel v. British Petroleum, Inc.* (June 4, 1992), 8th Dist. No. 60816, 1992 WL 125235 (that the consumer had the opportunity to and did take her vehicle to other mechanics for service was evidence that she was able to protect her interest even if she did lack knowledge as to car repairs).

{¶ 28} He further testified that he agreed to the price, he understood that he had to borrow the full amount for the truck, he knew that Spartan was looking for companies to finance the truck for him, and he knew that Spartan was not loaning him the money. He also testified that before signing the note he verified the amount financed, the rate of interest, and the monthly payments. All of this testimony shows that he did have a basic understanding of the terms of the contract and was able to protect his interests.

{¶ 29} Furthermore, the language on the back of the contract is clear. It states:

{¶ 30} "**Repossession of the Goods.** Repossession means that, if you fail to pay according to the payment schedule or if you break any of the agreements in this contract (default), the Creditor can take the goods from you. * * *

{¶ 31} "**Getting the Goods Back After Repossession.** If the Creditor repossesses the goods, you have the right to get them back (redeem) by paying the entire amount you owe on the contract (not just past due payments)."

{¶ 32} An average person with the ability to read who is able to shop for the best deal and negotiate terms of a sale of a car would be able to understand these terms. Thus, for all the above reasons, summary judgment was warranted on the subsection (B)(1) claim.

{¶ 33} As mentioned, under subsection (B)(5), Spartan would act unconscionably if it required Martin to enter into a consumer transaction on terms Spartan

---

1. Previously he had bought a Blazer from Spartan in 1995, and he had negotiated that price.

knew were substantially one-sided in its favor. Martin's argument fails for two reasons.

{¶ 34} First, the evidence does not remotely suggest that Spartan required Martin to sign the note. In fact, Martin went to more than one dealership looking for the terms he wanted. Martin picked Spartan because it was able to acquire financing through GMAC, the financing company, with the terms he wanted. Thus, Martin's own action of looking for the deal he wanted shows that Spartan did not require him to sign the note.

{¶ 35} Second, the note was an agreement between Martin and GMAC. Martin testified that he was aware that he was borrowing money from GMAC and not Spartan. Spartan was just looking for a financing company that could provide Martin with a zero down payment and a monthly payment around $400. Therefore, every party involved was aware that Spartan was not a party to the note. As Spartan was not a party to the agreement, the agreement was not substantially one-sided in Spartan's favor. Therefore, the trial court appropriately granted summary judgment in Spartan's favor on the subsection (B)(5) claim.

{¶ 36} Thus, for the reasons stated above, the trial court did not err in granting summary judgment for Spartan. This assignment of error lacks merit.[2]

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 37} "The trial court.erred in granting General Motors Acceptance Corporation, NA's motion for partial summary judgment by concluding that General Motors Acceptance Corporation, NA is a dealer in intangibles without any evidence being proffered to support its claim and that Denver Martin was not permitted to redeem his vehicle pursuant to Ohio Revised Code § 1317.12 because the transaction is governed by Ohio Revised Code § 1309.102(A)(65) § 1309.102(A)(73). (judgment entry filed March 2, 2004 page 7)."

{¶ 38} As stated above, an appellate court conducts a de novo review of a trial court's decision to grant a motion for summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton*, 77 Ohio St.3d at 105, 671 N.E.2d 241.

{¶ 39} Martin sets forth two arguments under this assignment of error. The first argument is based on R.C. 1317.01 et seq., the Retail Installment Sales Act

---

2. Spartan, in defending against this appeal, argues additional points that are not addressed in this assignment of error. The first additional argument is that RISA does not apply to the note. This argument will be addressed under the second assignment of error, as it primarily relates to GMAC. The second additional argument is that RISA does not bar GMAC's redemption provisions. As with the first argument, this argument primarily relates to GMAC and will be addressed under the next assignment of error.

("RISA"); the second argument is based upon R.C. 1345.03, the Consumer Sales Practices Act ("CSPA").

### Retail Installment Sales Act (RISA)

{¶ 40} Martin's argument based upon RISA focuses on R.C. 1317.12. This statute contains the statutory mandates for repossession of goods and a debtor's right to cure the default. It states that in order to redeem the goods the debtor must pay all of the following at the time of redemption:

{¶ 41} "(A) All installments due or past due at the time of such delivery;

{¶ 42} "(B) Any unpaid delinquency or deferred charges;

{¶ 43} "(C) The actual and reasonable expenses incurred by the secured party in retaking possession of the collateral provided that any portion of such expenses which exceeds twenty-five dollars need not be delivered to the secured party pursuant to this division, but shall be added to the time balance;

{¶ 44} "(D) A deposit by cash or bond in the amount of two installments, to secure the timely payment of future installments by the debtor. The secured party may apply such cash or the proceeds of such bond toward the satisfaction of the debt in the event of another default by the debtor." R.C. 1317.12.

{¶ 45} The security agreement at issue here differs from this section in that it requires the debtor to pay the entire amount owed on the contract, not just the delinquent amount. Martin argues that R.C. 1317.12 controls over the note provision for redeeming the repossessed goods. Both GMAC and Spartan argue that RISA does not apply to GMAC, and thus R.C. 1317.12 is inapplicable. The trial court held that R.C. 1317.12 was inapplicable to GMAC, since it was a dealer of intangibles.

{¶ 46} RISA governs only retail installment sales that arise out of "consumer transactions." R.C. 1317.01(A); *Huntington Natl. Bank v. Cole* (1987), 44 Ohio App.3d 28, 29, 540 N.E.2d 735. R.C. 1317.01(P) defines "consumer transaction" for RISA purposes as "a sale, lease, assignment, or other transfer of an item of goods, or a service, *except those transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code,* and their customers, * * * to an individual for purposes that are primarily personal, family or household." (Emphasis added.) "Dealers in intangibles" are one of the groups of persons defined in R.C. 5725.01.

{¶ 47} Thus, RISA is inapplicable, and R.C. 1317.12 does not apply if GMAC is a dealer of intangibles. The determination for this court is whether GMAC is a dealer of intangibles.

{¶ 48} R.C. 5725.01 defines "dealers in intangibles":

{¶ 49} " 'Dealer in intangibles' includes every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, or of buying or selling bonds, stocks, or other investment securities, whether on the person's own account with a view to profit, or as agent or broker for others, with a view to profit or personal earnings. Dealer in intangibles excludes institutions used exclusively for charitable purposes, insurance companies, and financial institutions."

{¶ 50} The first factor to be considered in determining whether GMAC is a dealer in intangibles is whether GMAC "keeps an office or other place of business" in Ohio and conducts business at this office. R.C. 5725.01. The note indicates on its face page that GMAC conducts business at 7870 Market Street in Youngstown, Ohio. Despite the fact that this address is also Spartan's, it at the very least is evidence that GMAC has a place of business in Ohio and that it conducts business at this location. Thus, the first factor is met.

{¶ 51} The second factor under R.C. 5725.01 that must be met in order for GMAC to be considered a dealer of intangibles is that GMAC is "in the business of lending money * * * with a view to profit." Martin testified that he was borrowing money from GMAC, not Spartan. Leonard Rodgers, department head of collections for GMAC, stated that GMAC lent Martin the money to purchase the vehicle from Spartan. Furthermore, the note establishes that GMAC did lend Martin $20,214.84 with an annual percentage rate of 12.66. Therefore, according to the note, after all payments were made, Martin would have paid GMAC $28,185.30. Thus, it can be concluded that GMAC is engaged in activities of lending money and exchanging evidence of indebtedness, and therefore, is a dealer of intangibles whose actions fall squarely within the quoted exception to R.C. 1345.01(A). *Dartmouth Plan Inc. v. Haerr* (Dec. 4, 1990), 3d Dist. No. 8–89–25, 1990 WL 197884.

{¶ 52} Therefore, R.C. 1317.12 and RISA do not apply to GMAC. Thus, the redemption provision in the note controls, not R.C. 1317.12. Consequently, the trial court did not err in granting partial summary judgment in favor of GMAC on this issue. However, even if we did not reach that conclusion, GMAC's alternative argument that R.C. 1317.12 is not applicable because the agreement between GMAC and Martin is not a "retail installment contract" also prevails.

{¶ 53} A " 'Retail installment sale' includes every retail installment contract to sell specific goods, every consumer transaction in which the cash price may be paid in installments over a period of time, and every retail sale of specific goods to any person in which the cash price may be paid in installments over a period of time." R.C. 1317.01(A).

{¶ 54} Under the above definition, it is clear that the purchase of the vehicle was not a "retail installment contract." The retail order between Spartan and Martin states that Martin will purchase the vehicle for $20,214.28 and that that amount is due upon delivery. The note indicates that Martin borrowed $20,214.28 from GMAC and that GMAC will pay that amount to Spartan. The agreement further states that Martin will pay the loan off over 66 months for $427.05 per month and that the APR on the loan is 12.66 percent.

{¶ 55} Thus, the transaction between GMAC and Martin involves money. Under R.C. 1317.01(A) a "retail installment sale" involves "goods." The definition of "goods" under R.C. 1317.01(C) specifically excludes "the money in which the price is to be paid." The plain terms of the two agreements and the language of R.C. 1317.01 indicate that the note is a loan agreement and not a retail installment contract. See *Huntington*, 44 Ohio App.3d at 30, 540 N.E.2d 735 (holding that the exhibit attached to the complaint was a promissory note and security agreement directly between the bank and the plaintiff and that there was no indication that there was any other contract or agreement between the parties). Accordingly, RISA does not apply. See id. (discussing financial institutions but still concluding that transactions do not come under RISA merely because a note is handled by a dealer and the proceeds are paid directly to the dealer pursuant to the authority contained in the note and transaction). Thus, summary judgment was also appropriate under this rationale.

## Consumer Sales Practices Act (CSPA)

{¶ 56} Martin's argument based upon the CSPA focuses on R.C. 1345.03, the statute addressed in the first assignment of error. However, in this assignment of error, Martin argues that GMAC acted unconscionably in not allowing him to redeem the vehicle pursuant to the requirements in R.C. 1317.12.

{¶ 57} R.C. 1345.03 does not apply to GMAC. As explained under the first assignment of error, R.C. 1345.03 applies to "consumers" and "suppliers" who enter into "consumer transactions." GMAC is not a "supplier" because it is not the seller. Spartan is the seller.

{¶ 58} Furthermore, as mentioned, GMAC is a dealer in intangibles, and thus, a consumer transaction could not have occurred. R.C. 1345.01(A) defines what constitutes a "consumer transaction;" exempted from the definition are transactions between persons defined in R.C. 5725.01, i.e., "dealers in intangibles." Consequently, R.C. 1345.03 has no application to GMAC. Accordingly, for all of these reasons, this argument has no merit, and this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶ 59} "The court erred in denying Denver Martin's motion to compel discovery as to discoverable material to establish that General Motors Acceptance Corporation, NA's was not a dealer in intangibles and its discretionary election of remedies in which a consumer may redeem his vehicle [sic] (judgment entry filed March 2, 2004 page 10)."

{¶ 60} We review a trial court's resolution of discovery issues under an abuse-of-discretion standard of review. *Lightbody v. Rust* (2000), 137 Ohio App.3d 658, 739 N.E.2d 840. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 61} GMAC argues that this issue is premature since not all issues have been resolved by the trial court. The issue still remaining before the trial court is the breach-of-peace issue. Thus, GMAC argues that we should not address this assignment of error.

{¶ 62} Typically, a discovery order is not subject to immediate review, and an abuse of discretion does not in and of itself render final an interlocutory order. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659. However, the discovery order at issue relates solely to the security interest and redemption issues that were decided by the trial court's partial grant of summary judgment for GMAC. Accordingly, since the discovery relates to the issues before the court now, which are final appealable orders, the discovery issue is not premature.

{¶ 63} Therefore, our analysis turns to whether the court abused its discretion in denying the motion to compel. Martin sought to compel all financing agreements signed by individuals in the state of Ohio from January 1, 2001, to June 20, 2003, who have defaulted on their loans and all letters that were sent to those individuals that set forth the conditions under which they would be permitted to redeem their motor vehicles. GMAC filed a response to this motion to compel, claiming that it was too burdensome and irrelevant.

{¶ 64} The trial court in effect held that the information requested was irrelevant. It stated that the facts of the case before it are limited solely to Martin, and thus, discovery should pertain to the issues raised as a result of the default and repossession of his vehicle. Additionally, the court cited a First Appellate District case that held that it was not an abuse of discretion for a court to overrule a motion to compel certain discovery when it was filed after the defendant moved for summary judgment and when the court was convinced, in

light of the evidentiary materials before it, that the information was not vital or necessary in resolving the controversy. *Glick v. Marler* (1992), 82 Ohio App.3d 752, 758–759, 613 N.E.2d 254.

{¶ 65} Considering the reasoning of the court, it was not an abuse of discretion to deny the motion to compel. Although the motion to compel was filed before GMAC moved for partial summary judgment, the information sought by the motion to compel could still be determined to be burdensome and irrelevant. The terms of another person's note would not typically affect the decision in this case, nor would the statements made in letters to other people about the redemption process in their case. The notes and letters would not add any evidence that GMAC was not a dealer in intangibles or that it was making retail installment contracts. Furthermore, Martin's argument provides no explanation how this sought information would establish any of the above. Thus, the denial of the motion to compel is affirmed.

{¶ 66} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO, P.J., and DEGENARO, J., concur.