[Cite as *Obringer v. Wheeling & Lake Erie RR. Co.*, 2010-Ohio-601.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

MICHAEL J. OBRINGER, ET AL.,

    PLAINTIFFS-APPELLEES,           CASE NO. 3-09-08

    v.

WHEELING & LAKE ERIE
RAILWAY COMPANY,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Trial Court No. 08-CV-519

Appeal Dismissed

Date of Decision:    February 22, 2010

APPEARANCES:

    *Colleen A. Mountcastle*  for Appellant

    *Timothy R. Obringer*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Wheeling & Lake Erie Railway Company (hereinafter referred to as "Wheeling"), appeals the judgment of the Court of Common Pleas for Crawford County granting a preliminary injunction in favor of Michael and Mary Obringer and Bradley and Michelle Geissman (collectively referred to as "Appellees"). On appeal, Wheeling asserts that the trial court erred in reconsidering its prior decision denying the preliminary injunction; that the trial court erred in determining that a question of law existed as to whether use of the language "heirs and assigns" was necessary to create a permanent easement; that the trial court erred in granting Appellees' motion for preliminary injunction; and, that the trial court erred when it determined that the preliminary injunction would maintain the status quo. Finding that the order appealed from is not final and appealable, we dismiss Wheeling's appeal.

{¶2} In November 2008, Appellees filed a complaint for injunctive relief, compensatory damages, and punitive damages against Wheeling, alleging that the Obringers owned a parcel of property known as 760 South Poplar Street in New Washington, Ohio; that the Geissmans owned property known as 801 South Poplar Street in New Washington, Ohio; that Wheeling owned a thirty-three foot strip of land (hereinafter referred to as the "railway property") running from east to west in New Washington abutting the north end of the Obringers' property; that

Wheeling acquired the railway property in 1888, when the then-owner of both the Obringer and Geissman parcels conveyed the railway property to Wheeling, while reserving an easement or right of way (hereinafter referred to as "the crossing") for the purpose of permitting permanent ingress and egress to the owner over and across the railway property to afford access to the public street; that, in July 2008, Wheeling, with neither consent of nor notice to Appellees, blocked access to the crossing by erecting concrete barriers and by removing or destroying the crossing; and, that, Wheeling's conduct resulted in a continuing trespass of Appellees' property rights and an invasion of Appellees' rights to use the crossing, which, if not enjoined, would cause irreparable harm and injury for which Appellees had no adequate remedy at law. On these bases, Appellees requested relief via 1) an order directing Wheeling to remove the concrete barriers from the right of way; 2) an order directing Wheeling to replace and repair the crossing; 3) a permanent injunction enjoining Wheeling from placing a barrier or interfering with the right of way; 4) compensatory damages; 5) punitive damages; and, 6) attorneys fees and court costs. Additionally, Appellees filed a motion for a preliminary injunction enjoining Wheeling, pending the final hearing and determination, from blocking, removing, or interfering with Appellees' rights of ingress and egress over the crossing.

{¶3} Shortly thereafter, Wheeling filed a brief in opposition to Appellees' motion for preliminary injunction, asserting that Appellees had failed to demonstrate that they were entitled to the requested relief or that they would succeed on the merits of their claim; that Appellees had not been injured; that Appellees waited over three months to bring the action; that Appellees failed to demonstrate a sufficient public interest to justify an injunction; and, that the status quo would be upset if the trial court ordered Wheeling to restore the crossing.

{¶4} Subsequently, the trial court held a preliminary injunction hearing, with visiting Judge Faulkner presiding.[1] At the hearing, the following testimony was heard and facts adduced.

{¶5} James Pry II testified that he was an attorney and the president of ACS Title and Closing Service; that he was engaged by the Obringers to examine the crossing; that he conducted a title chain of the railroad property by searching the records and also examined the Obringer and Geissman parcels; that, in 1888, Peter Alt granted a warranty deed transferring a thirty-three foot strip of property to the Pittsburgh Akron and Western Railroad Company (Wheeling's predecessor), and that Alt reserved the right for a public access across the railroad

---

[1] We note that the record does not contain an entry from the Supreme Court of Ohio assigning Judge Faulkner to the case. There is no authority for a visiting judge to preside in a court of common pleas without a assignment by the Supreme Court of Ohio. See *Lungaro v. Lungaro*, 9th Dist. No. 09CA0024-M, 2009-Ohio-6372, ¶6. Nevertheless, our finding that the order appealed from was not final and appealable and dismissal of the appeal renders this issue irrelevant.

property; that the easement was in the chain of title; that the Alt deed specifically provided that "it is a consideration of that grant that the railroad shall provide a good and sufficient crossing across its tracks, the lane on said premises protecting each side by cattle guard" (hearing tr., p. 65); that, even though the deed did not specifically provide that the crossing would run with the land or be retained for Alt's heirs and assigns, it was his expert opinion that the language of the deed created an easement that ran with the land, and that Wheeling infringed on the easement by blocking the crossing; and, that, even if the thirty-three foot strip of land ended halfway through the tracks and the railroad did not own the thirty-three foot strip of land on the other side at the time the Alt deed was executed, he still believed the wording of the deed was sufficient to grant an easement across the entire sixty-six foot strip of property running with the land.

{¶6} Police Chief Scott Robertson of the Village of New Washington testified that he was also the emergency medical services administrator for the village; that he had safety concerns relating to the railroad crossing being blocked because it would slow emergency response time to the Obringer and Geissman residences by approximately three to five minutes; that, after the blockage, emergency service vehicles would need to take an alternate route requiring them to leave the village, and then come back into the village where the residences were located; that there were six individuals living in the Geissman residence and up to

five at the Obringer residence; that the only alternate access to the Obringer residence was via a private road referred to as the "south lane" that traversed the Geissman property; that he had observed that the south lane "closes up" in the winter when there was moderate to heavy snow; and, that, due to this issue with the south lane, it could be impossible for emergency services to reach the Obringer and Geissman residences depending on the weather.

{¶7} Clarence Jaeger of Wheeling testified that the railway came to the decision to close the crossing because it was upgrading the rail to a higher speed and determined that it would be an increased liability; that Wheeling also had concerns that the Village of New Washington was anticipating a new housing development in the area which would have increased the amount of use of the crossing; that the crossing was supposed to be a farm crossing, but was not being used for farming purposes any longer; and, that Wheeling did not notify the home owners with properties abutting the crossing prior to closing it because they did not believe they had an obligation to do so. On cross-examination, Jaeger testified that Wheeling deemed the crossing was for farm purposes because the language in the Alt deed discussed cattle guards; that he read the reservation of the crossing in the deed as personal to Alt, and did not believe that the crossing was required to be maintained for Appellees; and, that he believed the deed only gave Alt the right to cross to the center of the railroad tacks.

{¶8} In December 2008, both parties filed post-hearing briefs on the preliminary injunction issue.

{¶9} In January 2009, the trial court issued its decision on the preliminary injunction issue, finding that the crossing was established in 1888 and had been used without protest for 120 years; that the Obringers were landlocked without the crossing and were dependent on the good will of the Geissmans for ingress and egress via the south lane; that the south lane was impassable due to snow on occasion during the winter; and, that emergency service providers would be delayed for a matter of minutes in order to reach Appellees' residences via the south lane. Thereafter, the trial court concluded that Appellees did not have a reasonable chance of succeeding on the merits of their case because the language "heirs and assigns" did not appear within the reservation of interest in the Alt deed, and this language was required to create interests running with the land prior to 1925; because the reservation of interest used the word "consideration," indicating that it was personal to Alt; and, because Alt only owned and only granted to Wheeling a thirty-three foot strip of land ending halfway through the railroad tracks, and had no interest in the strip of land on the other side. Thus, the trial court concluded that Appellees had no enforceable legal right to use the crossing as against Wheeling, and had not demonstrated by the requisite degree of

proof the likelihood of success upon the merits. Consequently, the trial court denied the preliminary injunction.

{¶10} In March 2009, Appellees filed a motion for reconsideration of the trial court's decision denying their motion for preliminary injunction, asserting that the trial court incorrectly applied the standard for granting or denying a motion for preliminary injunction because it did not appropriately balance all applicable factors and recognize that no one factor should be dispositive. Additionally, Appellees argued that the trial court erroneously ruled that Appellees could not demonstrate a reasonable likelihood of success upon the merits. Thereafter, Wheeling filed a motion in opposition to Appellees' motion for reconsideration and a motion for summary judgment and to quiet title, arguing that the trial court's entry denying Appellees' motion for preliminary injunction was a final appealable order that could not be reconsidered and could not be relitigated under res judicata principles; that there were no issues of material fact in dispute; and, that Wheeling was entitled to judgment as a matter of law and a judgment of quiet title.

{¶11} In April 2009, the trial court, with local elected judge, Judge Wiseman, presiding, granted Appellees' motion for reconsideration and vacated its January 2009 decision. The trial court determined that the law was not settled on the issue of whether the 1888 Alt deed contained sufficient language to create a

permanent easement for the benefit of Alt's successors and assigns, and that the preliminary injunction would return the parties "to the status quo that has existed for 120 years." (Apr. 2009 Decision on Reconsideration, p. 3-4). Additionally, in its order granting Appellees preliminary injunction, the trial court enjoined Wheeling from blocking or interfering with Appellees' rights of ingress and egress over the crossing; ordered Wheeling to remove the concrete barriers from the crossing; and, ordered Wheeling to replace and repair the crossing. Additionally, the trial court overruled Wheeling's motion for summary judgment, finding that genuine issues of material fact existed.

{¶12} It is from the trial court's order vacating its January 2009 decision and granting Appellees preliminary injunction that Wheeling appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN RECONSIDERING AND REVERSING JUDGE FAULKNER'S JANUARY 14, 2009 DECISION.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED WHEN IT DETERMINED THAT A QUESTION OF LAW EXISTS AS TO WHETHER THE USE OF "HEIRS AND ASSIGNS" IS NECESSARY TO CREATE A PERMANENT EASEMENT.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN GRANTING APPELLEES'
MOTION FOR PRELIMINARY INJUNCTION.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED WHEN IT DETERMINED
THAT THE PRELIMINARY INJUNCTION WILL
MAINTAIN THE STATUS QUO.**

{¶13} Before reaching the merits of Wheeling's appeal, we must first determine whether the judgment appealed from is a final appealable order and properly before this Court.

{¶14} Initially, we note that Wheeling filed a motion to suspend the preliminary injunction pending appeal, and, in the alternative, a motion to modify the preliminary injunction pending appeal and require Appellees to post a bond to secure the injunction. In deciding this motion, this Court, in May 2009, found that the trial court's judgment granting the preliminary injunction was a final order under R.C. 2505.02(B)(4). However, upon further review of the record and the applicable case law, we find the following

{¶15} Appellate jurisdiction is limited to review of lower courts' final judgments. Section 3(B)(2), Article IV of the Ohio Constitution. A final order is one that disposes of the whole case or some separate and distinct branch thereof. *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 94. To be a final appealable order, a judgment entry must meet the requirements of R.C. 2505.02 and, if applicable,

Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ*. (1989), 44 Ohio St.3d 86, 88; *Centex Home Equity Co., L.L.C. v. Williams*, 3d Dist. No. 6-06-07, 2007-Ohio-902, ¶12.

{¶16} R.C. 2505.02 governs final orders and provides, in pertinent part:

**(A) As used in this section:**
**\* \* \***

**(3) "Provisional remedy" means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction \* \* \***

**(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:**
**\* \***

**(4) An order that grants or denies a provisional remedy and to which both of the following apply:**

**(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.**

**(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.**

{¶17} Contrastingly, preliminary injunctions are by nature interlocutory, tentative, and impermanent. *Burns v. Daily* (1996), 114 Ohio App.3d 693, 708; R.C. 2505.02(A)(3). As such, orders issuing or modifying preliminary injunctions are not final and appealable unless (1) "[t]he order in effect determines the action

with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy," and (2) the party appealing from the order "would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(A)(3),(B)(4); *Patio Enclosures, Inc. v. Lanigan*, 9th Dist. No. 21102, 2002-Ohio-6459, ¶8. Both requirements must be satisfied for an order to be final and appealable. R.C. 2505.02(A)(3),(B)(4); *Hootman v. Zock*, 11th Dist. No. 2007-A-0063, 2007-Ohio-5619, ¶13.

{¶18} Here, in order to satisfy the second requirement of R.C. 2505.02(B)(4), Wheeling must demonstrate it will be deprived of "a meaningful or effective remedy" if it cannot appeal now. See R.C. 2505.02(B)(4)(b). Courts have found that "'[i]t is well established that the granting of a temporary or preliminary injunction, in a suit in which the ultimate relief sought is a permanent injunction, is generally not a final appealable order.'" *Hootman*, 2007-Ohio-5619, at ¶15, quoting *Woodbridge Condominium Owners' Assn. v. Friedland*, 11th Dist. No. 2003-L-072, 2004-Ohio-14, ¶4.

{¶19} Additionally, courts have found that "'a preliminary injunction which acts to maintain the status quo pending a ruling on the merits is not a final appealable order under R.C. 2505.02.'" *Hootman*, 2007-Ohio-5619, at ¶16,

quoting *E. Cleveland Firefighters, IAFF Local 500 v. E. Cleveland*, 8th Dist. No. 88273, 2007-Ohio-1447, ¶5; *Deyerle v. Perrysburg*, 6th Dist. No. WD-03-063, 2004-Ohio-4273, ¶15. Although "status quo" has apparently not been defined by the General Assembly or by Ohio courts in the context of preliminary injunctions, the Supreme Court of Illinois has held that "[t]he status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy." *Postma v. Jack Brown Buick, Inc.* (1993), 157 Ill.2d 391, 626 N.E.2d 199, 202. The holdings of cases decided in Ohio courts evince a similar precedent for determining the status quo. See *Hootman*, 2007-Ohio-5619, at ¶17 (finding that the trial court was maintaining the status quo by ordering parties to remove an obstruction from a drainage ditch pursuant to a preliminary injunction order); *Neamonitis v. Gilmour Academy*, 8th Dist. No. 92452, 2009-Ohio-2023, ¶¶11-12 (finding that the trial court was maintaining the status quo by ordering a school, via temporary restraining order, to reinstate a student it had expelled, and then granting preliminary injunction indefinitely extending the temporary restraining order); but, see, *Neamonitis*, 2009-Ohio-2023, at ¶22 (Kilbane, P.J., dissenting).

{¶20} Here, Judge Wiseman's April 2009 decision granting a preliminary injunction in Appellees' favor provided that it was returning the crossing "to the status quo," and ordered Wheeling to remove the concrete barriers and repair the

-13-

crossing over the right of way. As this would return the crossing to the last uncontested status preceding the controversy before us, we find that the trial court's April 2009 order did, in fact, act to maintain the status quo. Consequently, we find that the preliminary injunction Wheeling appeals from is not a final appealable order, and this Court lacks jurisdiction to consider the appeal. See *Hootman*, 2007-Ohio-5619, at ¶16. Additionally, as Wheeling failed to establish the second requirement of R.C. 2505.02(B)(4), we need not consider whether the first requirement was satisfied.

{¶21} Finally, we briefly address Wheeling's contention that the trial court had no authority to reconsider and reverse Judge Faulkner's January 2009 judgment. The Supreme Court of Ohio has held that "an abuse of discretion does not of itself render final an interlocutory order." *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57; *Martin v. Gen. Motors Acceptance Corp.*, 160 Ohio App.3d 19, 2005-Ohio-1349, ¶62. Thus, regardless of whether the trial court abused its discretion in granting Appellees' motion for reconsideration, the trial court's order was not final, and we do not have jurisdiction to consider the appeal.

{¶22} Accordingly, we dismiss this appeal for lack of jurisdiction.

*Appeal Dismissed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

Case No. 3-09-08

**/jlr**