RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name:  09a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DELORES HARTMAN (08-3773); DEBORAH L.
RICE (08-3804),

               *Plaintiffs-Appellants,*

UNITED STATES OF AMERICA,

               *Intervenor,*

     *v.*

GREAT SENECA FINANCIAL CORP.; JAVITCH,
BLOCK & RATHBONE, LLP,

               *Defendants-Appellees.*

Nos. 08-3773/3804

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
Nos. 04-00972; 04-00951—George C. Smith, District Judge.

Argued:  March 13, 2009

Decided and Filed:  June 30, 2009

Before:  MOORE and WHITE, Circuit Judges; OLIVER, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Stephen R. Felson, LAW OFFICE, Cincinnati, Ohio, for Appellants. Michael D. Slodov, JAVITCH, BLOCK & RATHBONE LLP, Cleveland, Ohio, for Appellees.  Howard S. Scher, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:**  Stephen R. Felson, LAW OFFICE, Cincinnati, Ohio, Steven C. Shane, Bellevue, Kentucky, for Appellants.  Michael D. Slodov, JAVITCH, BLOCK & RATHBONE LLP, Cleveland, Ohio, for Appellees. Howard S. Scher, Michael S. Raab, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

_____

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

MOORE, J., delivered the opinion of the court. OLIVER, D. J. (p. 18), delivered a separate concurring opinion. WHITE, J. (pp. 19-20), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Delores Hartman ("Hartman") and plaintiff-appellant Deborah Rice ("Rice") appeal the district court's grant of summary judgment in favor of defendants-appellees Great Seneca Financial Corporation[1] ("Great Seneca") and Javitch, Block & Rathbone, LLP ("Javitch"). Hartman and Rice both had credit-card accounts with Providian National Bank on which they allegedly owe money. Providian sold their accounts to Unifund CCR Partners, who sold the debts to Great Seneca. With the help of its attorneys (Javitch), Great Seneca attempted to collect on the defaulted debts by filing collection complaints against Hartman and Rice in Ohio state court. In each of those complaints, Great Seneca and Javitch asserted that a copy of the debtor's "account" was attached to the complaint. In each case, the document that Great Seneca and Javitch attached as an "account" resembled a credit-card statement but had been generated on Great Seneca's behalf.

Hartman and Rice filed separate actions in the United States District Court for the Southern District of Ohio arguing that Great Seneca and Javitch violated the Fair Debt Collection Practices Act ("FDCPA") by representing, in their state-court complaints, that the document generated on Great Seneca's behalf was a statement of the debtor's account. The district court determined that there was no genuine issue of material fact as to whether this behavior violated the FDCPA and granted Great Seneca's and Javitch's motions for summary judgment in each case. Hartman and Rice appeal these judgments.

---

[1]We note that apparently Great Seneca has voluntarily dissolved. The effect of this action is discussed in Part II.E.

We **REVERSE** the district court's grant of summary judgment and **REMAND** the cases for proceedings consistent with this opinion. We also **REMAND** the question of whether Great Seneca should remain a party to this litigation, given its asserted voluntary dissolution.

## I.  BACKGROUND

The district court explained the facts surrounding Hartman's debt as follows:

> Plaintiff Hartman is a consumer who opened a credit card account with Providian National Bank on or about May 10, 2000, account number xxxxxxxxxxx[yyyy]. Plaintiff received the terms and conditions of the credit card, which permitted transfer or assignment of right to payment. Plaintiff used the account from May 17, 2000 through March 20, 2001, at which time the account had an outstanding balance of $2,089.33. The account records indicate that final payment before charge off was made on February 9, 2001. The last fees were posted to the account in September 2001, with final balance being $2,565.81. The final statement before Plaintiff's account was sold, dated July 29, 2002 showed an unpaid balance of $2,551.30, after the posting of a $14.51 credit for a class action settlement benefit to her account.
>
> In February 2003, Providian National Bank sold Plaintiff's account to Unifund CCR Partners. Later that same month, Unifund sold the account to Defendant Great Seneca. With each sale, certain electronic information was transmitted, including the account number, name of the debtor, address, city, state, zip, phone, current balance, charge off date, charge off amount, last payment amount, last payment date, social security number, APR, account opening date, and an issuer flag for each account. Throughout this time, Plaintiff's account did not accrue additional fees and had an interest rate of 0%. In August 2003, Defendant [Javitch], on behalf of Defendant Great Seneca, sent a validation notice to Plaintiff. Plaintiff did not timely respond to the validation notice.

Hartman Dist. Ct. Op. and Order at 2.

The district court delineated the similar facts of Rice's case:

> Plaintiff Rice is a consumer who opened a credit card account with Providian National Bank on or about June 26, 2000, account number xxxxxxxxxxx[zzzz]. Plaintiff received the terms and conditions of the credit card, which permitted transfer or assignment of right to payment.

Plaintiff used the account from July 25, 2000 through March 21, 2001, at which time the account had an outstanding balance of $1,994.88. The account records indicate that final payment before charge off was made on April 6, 2001. The last fees were posted to the account in November 2001, with final balance being $2,778.99. The final statement before Plaintiff's account was sold, dated January 28, 2003, reflected the $2,778.99 balance.

In February 2003, Providian National Bank sold Plaintiff's account to Unifund CCR Partners. Later that same month, Unifund sold the account to Defendant Great Seneca. With each sale, certain electronic information was transmitted, including the account number, name of the debtor, address, city, state, zip, phone, current balance, charge off date, charge off amount, last payment amount, last payment date, social security number, APR, account opening date, and an issuer flag for each account. Throughout this time, Plaintiff's account did not accrue additional fees and had an interest rate of 0%. In August 2003, Defendant [Javitch], on behalf of Defendant Great Seneca, sent a validation notice to Plaintiff. Plaintiff did not timely respond to the validation notice.

*Rice v. Great Seneca Fin. Corp.*, 556 F. Supp. 2d 792, 795 (S.D. Ohio 2008).[2]

In October 2003, Javitch filed civil complaints in state court against Hartman and Rice on behalf of Great Seneca. The state-court complaint filed against Hartman read as follows:

1. There is due the Plaintiff from the Defendant upon an account, the sum of $2,551.30.
2. A copy of the said Account is attached hereto as "Exhibit A".

Hartman Ex. A to Am. Compl.. The language of the state-court complaint filed against Rice is identical except that the amount owed is different. Javitch attached a financial document called "Exhibit A" to each of the complaints. In each case, Exhibit A was

---

[2]The facts contained in these summaries are either undisputed or, like whether and how much Rice and Hartman owe Great Seneca, are useful background but are ultimately irrelevant to the outcome of the cases. Because we are reviewing the grant of summary judgment, we consider all facts and inferences in favor of Hartman and Rice. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 430 n.1 (6th Cir. 2009).

prepared by Great Seneca's law firm[3] and resembles a typical credit-card statement. Hartman Ex. B to Am. Compl.; Rice Ex. B to Am. Compl.. In both cases, the document heading indicates that Exhibit A was produced by Great Seneca. The document includes the debtor's address and a space for her to change her address. It also contains an account number and indicates a new balance, $2551.30 for Hartman and $2778.99 for Rice, "DUE NOW." Hartman Ex. B to Am. Compl.; Rice Ex. B to Am. Compl.. Below this general account information are boxes for credit limit, credit available, amount past due, statement closing date, and a summary of transactions. The document also states that Great Seneca is the assignee of Unifund which is, in turn, the assignee of Providian. Hartman and Rice answered the complaints against them and served discovery. Great Seneca then dismissed the state-court actions against Hartman and Rice without prejudice.

After the state-court actions against them were dismissed, Hartman and Rice each filed an action in the United States District Court for the Southern District of Ohio alleging that Great Seneca and Javitch violated the FDCPA. Hartman and Rice argued that Great Seneca and Javitch acted in a false, deceptive, or misleading manner when they represented that Exhibit A, generated by Great Seneca, was an account statement. Hartman and Rice also alleged that this behavior violated the Ohio Consumer Sales Practices Act ("OCSPA"). In both cases, the plaintiffs moved for partial summary judgment, and the defendants moved for summary judgment. The United States filed briefs as an intervenor because Great Seneca and Javitch challenged the constitutionality of the FDCPA. Because of the similarity of the two cases, the district court judge in deciding Hartman's case adopted his *Rice* opinion.

The district court granted summary judgment in favor of Great Seneca and Javitch in both cases because it concluded that, as a matter of law, the least sophisticated consumer would have not have been confused or misled by the representation that

---

[3]Great Seneca employed a law firm, Wolpoff & Abramson, to service its accounts. Wolpoff & Abramson, on behalf of Great Seneca, hired Javitch to collect debts owed in Ohio. Wolpoff & Abramson created the document in question.

Exhibit A was an account statement.  Additionally, the district court found that, even assuming that there was an issue of material fact, Great Seneca and Javitch were protected by the FDCPA's bona-fide-error ("BFE") defense.

Hartman and Rice appeal the district court's grant of summary judgment in favor of Great Seneca and Javitch.  Hartman and Rice first argue that Great Seneca's and Javitch's representation that Exhibit A to the state-court complaints was a copy of the debtor's account was false in violation of 15 U.S.C. §§ 1692e and 1692e(10).  Second, they argue that presenting Exhibit A, which facially resembled a credit-card statement, as a copy of the debtor's account was deceptive and misleading in violation of §§ 1692e and 1692e(10) and an unfair means of debt collection under § 1692f.  Finally, Hartman and Rice assert that the BFE defense does not protect Great Seneca and Javitch because this defense does not apply to mistakes of law and because Great Seneca and Javitch have not shown that they are entitled to the defense.  Hartman and Rice also appeal the dismissal of their Ohio state-law claims, but concede that these claims stand or fall with their federal-law claims.  Great Seneca and Javitch respond that their behavior did not violate the FDCPA and that in any event, they are entitled to the BFE defense.  Additionally, Great Seneca and Javitch urge us to uphold the district court's judgment on the alternate grounds that this application of the FDCPA is unconstitutional.

## II.  ANALYSIS

### A.  Standard of Review

We have explained the standard for reviewing a grant of summary judgment as follows:

> We review a district court's grant of summary judgment de novo. *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007).  "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)).  "Because we review the grant of summary judgment *de novo*, we may affirm the judgment on

grounds other than those employed by the lower court, as long as the party opposing summary judgment is not denied the opportunity to respond." *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 n. 2 (6th Cir. 2008); *see also Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008).

*Medical Mutual of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008).

## B. Violation of the Fair Debt Collection Practices Act

Hartman and Rice assert that Great Seneca's and Javitch's behavior violates three provisions of the FDCPA: (1) 15 U.S.C. § 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt"; (2) § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"; and (3) § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." We have explained the concerns and standards applicable to FDCPA claims as follows:

> Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). "When interpreting the FDCPA, we begin with the language of the statute itself." *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999). As this court has noted, the FDCPA is "extraordinarily broad," crafted in response to what Congress perceived to be a widespread problem. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008) (quotation marks and citations omitted). Nonetheless, the standard "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* at 438-39 (quotation marks and citations omitted).

*Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir. 2008).

Ohio law requires that "[w]hen any claim or defense is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading." Ohio Civ. R. 10(D). The Ohio courts have explained this requirement as follows:

> It is elementary that in an action on an account, a plaintiff must set forth an actual copy of the recorded account. The records must show the name of the party charged and must include the following:
>
> (1)  a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum);
>
> (2)  listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and
>
> (3)  summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due.

*Arthur v. Parenteau*, 657 N.E.2d 284, 286 (Ohio Ct. App. 1995) (internal citations and quotation marks omitted).

Because Great Seneca and Javitch sued Hartman and Rice in Ohio state court, they were subject to this requirement. In attempting to comply with this requirement, Great Seneca and Javitch did two things which form the basis of Hartman's and Rice's current claims. First, the state-court complaints alleged that Hartman and Rice owed Great Seneca money on an account and that "[a] copy of the said Account is attached hereto as 'Exhibit A.'" Hartman Ex. A to Am. Compl.; Rice Ex. A to Am. Compl. Second, Great Seneca and Javitch attached to each complaint, as Exhibit A, a document which had been generated at Great Seneca's behest. As described above, these documents facially resembled credit-card statements but were not actually copies of the Providian credit-card accounts on which Hartman and Rice were sued. Instead, these documents contained general information about the debt that had been transferred

electronically from Providian to Unifund and then to Great Seneca.[4]  Although these documents showed a final balance due, they did not contain a listing of debits and credits that had been made throughout the life of the account.  Hartman and Rice assert that Great Seneca's and Javitch's representation that Exhibit A was a copy of the account on which they were being sued is false, deceptive, and/or misleading in violation of 15 U.S.C. §§ 1692e and 1692e(10) and is an unfair means of collecting a debt in violation of § 1692f.

Determining whether Great Seneca's and Javitch's representations regarding Exhibit A were false would require us to decide what "account" means under Ohio law. However, because we conclude that Hartman and Rice have raised a genuine issue of material fact as to whether Great Seneca's and Javitch's representations were misleading or deceptive, we hold that summary judgment is inappropriate regardless of whether the designation of Exhibit A as an "account" was false.  Though Exhibit A identifies Great Seneca as an assignee of Unifund, and Unifund as an assignee of Providian, the document on the whole looks like a credit-card statement issued by Great Seneca.  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440-41 (6th Cir. 2008) ("Based on these conflicting aspects of the letter, we conclude that the district court erred in granting summary judgment to Margelefsky, but we will not go to the other extreme either by granting summary judgment to Kistner.  Instead, a jury should determine whether the letter is deceptive and misleading . . . .").  Exhibit A contains no information that would enable a consumer to determine what had been charged to or paid on this account, or when the debt was accrued.  The only language in the document indicating that Great Seneca is a debt collector is the word "assignee," a legal term that would not necessarily help the least sophisticated consumer understand the relationships between the parties listed.  At this stage of litigation, Hartman and Rice do not need to establish that Exhibit A would definitely mislead the least sophisticated consumer.

---

[4]Hartman and Rice assert that Great Seneca and Javitch generated these documents and made them look like a credit-card statement to evade Ohio's account statement requirement because it would cost them too much to get copies of the actual account statements.  Further, Hartman and Rice allege that when a consumer questions the attached statement or asks for an actual statement, Great Seneca and Javitch dismiss their complaint against that consumer without prejudice.

Instead, they need only show that there is a genuine issue of material fact as to whether Exhibit A would mislead the least sophisticated consumer. Given the fact that the document appears to be a recent credit-card bill, which it is not, and with few indications to the contrary, there is a genuine issue of material fact as to whether this document would mislead the least sophisticated consumer. Accordingly, summary judgment is improper.[5]

Summary judgment is also improper on Hartman's and Rice's state claims under the OCSPA.[6] The district court concluded that Great Seneca and Javitch did not make false or deceptive representations and that Hartman's and Rice's OCSPA claims should therefore be dismissed. For the reasons discussed above, Hartman and Rice have sufficiently alleged that Great Seneca's and Javitch's representations were misleading and deceptive. Accordingly, their OCSPA claims should not have been dismissed. *See Kistner*, 518 F.3d at 441 ("The district court also granted summary judgment to Margelefsky on Kistner's OCSPA claims. Judgment on these claims was predicated on the court's conclusion that the collection letter 'did not make any misrepresentations, nor was it deceptive in any way,' and therefore did not violate the FDCPA. Kistner presented no independent evidence for her OCSPA claims, and the district court therefore saw no reason not to grant summary judgment to Margelefsky on those claims. Because we have concluded that summary judgment on the FDCPA claims was improperly granted, Kistner's OCSPA claims . . . must be remanded to the district court for reconsideration."). Similarly, because Hartman's and Rice's § 1692f claims were dismissed based on the district court's conclusion that Great Seneca's and Javitch's representations were not deceptive or misleading, summary judgment on those claims is improper.

---

[5]This court's recent decision in *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009), does not alter our analysis. Though Javitch is a party in both cases, the *Miller* court analyzed a different complaint and did not consider the issue before us.

[6]Great Seneca and Javitch argue that Hartman and Rice waived their OCSPA claims by failing to brief them on appeal. This assertion is incorrect; Hartman and Rice adopted their FDCPA analysis in connection with their OCSPA claims.

## C.  Defense of Bona Fide Error

The FDCPA provides a bona-fide-error defense which states that:

A debt collector may not be held liable in any action brought under this
subchapter if the debt collector shows by a preponderance of evidence
that the violation was not intentional and resulted from a bona fide error
notwithstanding the maintenance of procedures reasonably adapted to
avoid any such error.

15 U.S.C. § 1692k(c).  This court recently held that this defense applies to mistakes of
law as well as to clerical errors.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich
LPA*, 538 F.3d 469, 476 (6th Cir. 2008).  "To qualify for the bona fide error defense, a
debt collector must prove by a preponderance of the evidence that:  (1) the violation was
unintentional;  (2) the violation was a result of a bona fide error; and (3) the debt
collector maintained procedures reasonably adapted to avoid any such error."  *Id.* at 476-
77.

In each case, the district court found that even if summary judgment was not
proper because of a genuine issue whether the least sophisticated consumer would be
confused or misled, Great Seneca and Javitch had established that they were entitled to
the BFE defense.  The district court based this finding on its conclusion that Great
Seneca had no intent to mislead or misrepresent, that Great Seneca has exhaustive
procedures in place to verify financial information associated with debts, that Great
Seneca hired a law firm to manage its portfolio, and that Javitch relied on Great Seneca's
representations and did not believe that calling Exhibit A an "account" was prohibited
by the FDCPA.  Contrary to the district court's conclusion, Great Seneca and Javitch
have not established that they qualify for the BFE defense.  Taking the facts in the light
most favorable to Hartman and Rice, we believe that Great Seneca and Javitch have not
shown that the violation was unintentional.  Indeed, Hartman and Rice assert that Great
Seneca and Javitch made Exhibit A look like a credit-card statement in order to avoid
Ohio law.  Nor have Great Seneca and Javitch shown by a preponderance of the
evidence that they maintained procedures intended to avoid the type of error that
occurred.  The error made by Great Seneca and Javitch was a mistake of law; they

represented that Exhibit A was an account in a manner that could be found to be misleading or deceptive. However, Great Seneca's and Javitch's arguments fail to address the procedures that they had in place to avoid this type of error. Before the district court, Great Seneca and Javitch extensively detailed the process of the electronic transfer of debts to show that the amount they alleged was actually the amount owed. Procedures meant to ensure that the amount of a debt is properly verified are not at issue in these cases, as Hartman and Rice do not now dispute the underlying debts. One of Javitch's managing partners stated that he believed that Ohio law permitted the use of a document like Exhibit A in a creditor's claim. This statement suggests that the violation was unintentional, but it does not detail any procedures that Great Seneca or Javitch used to ensure that mistakes of law did not occur. Great Seneca and Javitch presented no evidence that they perform ongoing FDCPA training, procure the most recent case law, or have an individual responsible for continuing compliance with the FDCPA. *See Jerman*, 538 F.3d at 477.

Taking the facts in the light most favorable to Hartman and Rice, we believe that Great Seneca and Javitch have not shown by a preponderance that the violation was unintentional or that they employ procedures meant to avoid mistakes of law that could cause FDCPA violations. Therefore, the district court erred in its conclusion that Great Seneca and Javitch are entitled to dismissal at the summary-judgment stage of this litigation on the ground that they have established the BFE defense. Whether Great Seneca and Javitch can establish the elements of the BFE defense by a preponderance of the evidence is an issue that may be explored further as the litigation proceeds on remand.

## D.  Constitutionality of the FDCPA

In the district court, Great Seneca and Javitch argued that the complaints that they filed in state court were protected by the First Amendment and that the FDCPA is

unconstitutionally vague and overbroad when applied to pleadings that are not baseless.[7] The United States intervened to address these arguments.

Great Seneca and Javitch argue that they are immune from suit based on statements made during judicial proceedings and that permitting such suits as brought here under the FDCPA would violate their constitutional right to petition granted in the First Amendment. Similarly, Great Seneca and Javitch urge us to use the *Noerr-Pennington* doctrine to limit the application of the FDCPA. The Ninth Circuit has explained that "[u]nder the *Noerr-Pennington* rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006). However, there are various indications that the First Amendment and any common-law privilege that applied to statements made during judicial proceedings do not foreclose the current actions.

First, the Supreme Court's conclusion in *Heintz v. Jenkins*, 514 U.S. 291 (1995), indicates that the FDCPA is intended to burden debt-collectors even when they are engaged in litigation. An unpublished opinion of this court recently considered the constitutionality of the FDCPA and concluded:

> With respect to litigation immunity, Javitch maintains that "[t]he Right to Petition under the First Amendment has been construed by Courts to afford *qualified* immunity [to lawyers engaged in litigation]" (JA 38) (emphasis added), and, at the same time, "[l]awyers possess an *absolute* privilege [under common law] concerning statements they make which are reasonably related to and made in the course of judicial proceedings, and are likewise *absolutely* immune from suit for claims which are based on such statements." (JA 54) (emphases added.) Accepting these propositions as true as applied to Javitch would, of course, undercut *Heintz v. Jenkins*–where the Supreme Court held that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation*." 514 U.S. at 299 (emphasis

---

[7]The United States argues that these arguments should be deemed waived as they were only briefly noted in Great Seneca and Javitch's appellate briefs. However, because Great Seneca and Javitch did detail these arguments before the district court, and asserted these arguments as an alternate basis for upholding the judgment, we do not conclude that these arguments have been waived.

added); *see also* 15 U.S.C. § 1692a(6).  Javitch does not dispute that it "'regularly' engage[s] in consumer-debt-collection activity."  *See Heintz*, 514 U.S. at 299.  So any discussion of litigation immunity as applied to lawyers in general (those who do not regularly engage in consumer-debt-collection activity) is of no help to Javitch.  The Supreme Court has already said that lawyers, in their function as debt collectors, are covered by the Act.

*Gionis v. Javitch, Block & Rathbone, LLP*, 238 F. App'x 24, 26 (6th Cir. 2007) (unpublished).  Given the Supreme Court's detailed analysis and clear conclusion in *Heintz* that the FDCPA does apply to litigation-related activity, we believe that *Gionis* correctly concluded that the First Amendment does not shield lawyers engaged in litigation from FDCPA liability.  *See Heintz*, 514 U.S. at 294.  The opposite conclusion, that the First Amendment prohibits FDCPA suits based on statements made during judicial proceedings, would negate the Supreme Court's holding that the FDCPA "does apply to lawyers *engaged in litigation*."  *Heintz*, 514 U.S. at 294 (emphasis added).  Most of the other circuits that have considered this question have reached the same conclusion.  *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007) ("All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition.").

*Heintz* did not consider, however, whether the application of the FDCPA to statements made during judicial proceedings would violate the Constitution.  Even assuming that the First Amendment provides some protection from FDCPA suits based on conduct and statements during litigation, we believe that the First Amendment would not protect the conduct at issue in this case.  The Supreme Court has explained that the Petition Clause of the First Amendment does not provide an absolute right to petition.  *McDonald v. Smith*, 472 U.S. 479 (1985).  Instead, the Petition Clause protects legitimate petitioning but not sham petitions, baseless litigation, or petitions containing "intentional and reckless falsehoods."  *Id.* at 484.  In the context of defamation suits, the Supreme Court has explained that "there is no constitutional value in false statements of fact.  Neither the intentional lie nor the careless error materially advances society's

interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).   Hartman and Rice assert that Great Seneca and Javitch intentionally misrepresented that Exhibit A was an "account," and under the cases cited, it is clear that even assuming that there is some First Amendment protection relevant to the FDCPA, such an allegedly false statement is not immunized by the Petition Clause.

Great Seneca and Javitch next argue that the FDCPA is unconstitutionally vague and overbroad because if they can be punished for their behavior here, "it would lead to strict liability for what is protected petitioning activity. . . ." Mem. in Supp. of Claim of Unconstitutional Fed. Stat. at 3.  "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  There is no assertion here that the statute leads to arbitrary enforcement, and this statute provides adequate notice.  Great Seneca and Javitch overstate their case when they complain of strict liability for non-frivolous state-court petitions.  A debt collector who made literally true representations in a petition that violated the FDCPA because the representations were misleading would be protected from liability by the BFE defense if the collector could show that the mistake was unintentional, made in good faith, and that the collector had procedures to avoid such a mistake. *See Jerman*, 538 F.3d at 476-77.  The FDCPA does, however, punish a debt collector who makes a misleading or deceptive representation intentionally, in bad faith, or in the absence of procedures intended to avoid that type of error.  That Great Seneca and Javitch may fall into the second category does not indicate that the FDCPA is an unconstitutional restriction on the right to petition.

The overbreadth doctrine is "manifestly, strong medicine" that "should be employed 'only as a last resort.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 300 (6th Cir. 2008) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). An overbreadth challenge requires the party challenging the statute to show that there

is "'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" *Id.* (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)). Great Seneca and Javitch have not made the significant showing required, and we decline their request to affirm the district court's judgment on these alternate grounds.

Great Seneca and Javitch also argue that this application of the FDCPA violates their rights to substantive due process. However, "the Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged . . . ." *Montgomery v. Carter County*, 226 F.3d 758, 769 (6th Cir. 2000). Here it seems that any substantive-due-process argument Great Seneca and Javitch have is encompassed by their First Amendment claims. Accordingly, we will not independently consider their assertion of a violation of substantive due process.

Great Seneca and Javitch finally assert that this application of the FDCPA violates the Commerce Clause because it would involve the interference of the federal government with state rules of civil procedure. This argument is misdirected. Holding Great Seneca and Javitch liable under the FDCPA has no effect on Ohio state law. Instead, it punishes Great Seneca and Javitch for acting in a misleading and deceptive manner while using the Ohio court system. Ohio law is implicated in making this determination, but Ohio law is not altered by the federal prohibition on false, deceptive, or misleading debt collection. Accordingly, we refuse to affirm the district court's grant of dismissal on this alternate ground.

**E.  Great Seneca's Claim of Voluntary Dissolution**

After oral argument, the attorney for Great Seneca and Javitch filed a motion to dismiss Great Seneca from the cases. On March 6, 2009, prior to oral argument, Great Seneca notified this court that Great Seneca had filed for voluntary dissolution in Maryland, but that this action did not "moot or abate" the appeals. Great Seneca Notice, March 6, 2009, at 1. In the post-argument motion to dismiss, Great Seneca asserts that

because it filed its formal articles of dissolution on March 25, 2009, these articles were accepted by Maryland, and it has no assets to distribute, Great Seneca has ceased to exist and can no longer be sued. However, because fact questions remain as to whether Great Seneca has been dissolved under Maryland law and whether it still has assets to distribute, we **REMAND** to the district court the question of whether Great Seneca should remain a party to this litigation.

### III.  CONCLUSION

Because we conclude that there is a genuine issue of material fact as to whether calling Exhibit A an "account" would have misled the least sophisticated consumer, and because we cannot conclude on these facts that the bona-fide-error defense must apply, we **REVERSE** the district court's grant of summary judgment to Great Seneca and Javitch and **REMAND** the cases for proceedings consistent with this opinion. We also **REMAND** the question of whether Great Seneca should remain a party to this litigation, given its alleged voluntary dissolution.

---

**CONCURRENCE**

---

OLIVER, District Judge, concurring.  I concur in Judge Moore's opinion, but I write separately to discuss the way in which I find Great Seneca's document to be potentially misleading to the least sophisticated consumer.

While this case presents a close call, I find that there is slightly more than a scintilla of evidence to support the argument that the least sophisticated consumer would be misled into thinking that this document was a credit card statement from Great Seneca Financial Corporation.  As stated in the majority opinion, the document facially resembles that of a credit card statement, as it is arranged in a tabular format with boxes for credit limit, credit available, and new transactions similar to a legitimate credit card statement.

Additionally, it includes boxes for the statement closing date and the date of the transaction.  In these boxes, Great Seneca has included dates that are years after the individual consumers acquired their debt with Providian.  The least sophisticated consumer, in reviewing this document, could be misled into believing that it was a credit card statement for an account with Great Seneca that involved transactions that occurred on the date listed.  That consumer might then conclude that he or she never opened a credit card with Great Seneca and did not engage in any transactions with Great Seneca on such a date.  This interpretation of the document would lead the least sophisticated consumer to disregard the statement as one merely issued in error.  Accordingly, I concur that Plaintiffs have provided sufficient evidence to give rise to a genuine issue of material fact regarding whether this statement would mislead the least sophisticated consumer.

———————————

## DISSENT

———————————

WHITE, Circuit Judge, dissenting.  I respectfully dissent.  Plaintiffs' claims rest on the assertion that the accounts attached to the complaints as Exhibit A are false, deceptive or misleading.  The majority concludes that there is a genuine issue of material fact whether defendants' representations embodied in the accounts are deceptive or misleading.  Because I agree with the district court that Exhibit A to the complaints would not mislead the least sophisticated consumer, *Harvey v. Great Seneca Financial Corp*, 453 F.3d 324 (6th Cir. 2006), I would affirm.

The accounts attached to the complaints clearly stated that Great Seneca, the creditor, is the assignee of Unifund, assignee of Providian.  Thus, the least sophisticated consumer would know that the complaint concerns a debt once owed to Providian.  And, while the exhibits do, indeed, appear to be credit card statements, the original debts were incurred by use of a credit card.  Further, the account statements provide account numbers that match the original credit card accounts, thus giving additional notice of the source of the original obligation to Providian.  On the other hand, the account statements do not purport to show purchases or charges; they are clearly summaries of the balances due on the debts once owed to Providian.  Whether the account statements satisfy the requirements of Ohio law is a separate question, the answer to which does not affect whether the account statements are false, misleading or deceptive.  I cannot agree that the use of these statements of account would mislead the least sophisticated consumer into believing that he or she incurred a recent debt by use of a credit card issued by Great Seneca.[1]

———————————

[1] I note that plaintiffs' complaints focus on the use of these statements of account to "falsely impl[y] that Defendants had possession of documentation from the original creditor which showed a precise amount due as of a 'statement closing date.'"  A similar claim was rejected in *Harvey*, 453 F.3d at 331-33.

Nor can I conclude that use of such account statements by an assignee as an attachment to a court complaint constitutes an "unfair or unconscionable means to collect or attempt to collect any debt." Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f. While one can conceive of circumstances where a court filing would amount to an unfair or unconscionable means of debt collection, the use of this form of statement to collect an otherwise valid and actionable debt is not unfair or unconscionable.

I would affirm.