NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0377n.06
Filed: June 6, 2007

Nos. 06-3048 & 06-3171

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHERRY GIONIS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JAVITCH, BLOCK & RATHBONE, LLP, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |

BEFORE:    KEITH, COLE, Circuit Judges; and STEEH, District Judge.[*]

**DAMON J. KEITH, Circuit Judge.**   Sherry Gionis entered into a credit card agreement with Direct Merchants Credit Card Bank ("Direct Merchants").  When she became delinquent in her payments, Direct Merchants hired the law firm of Javitch, Block & Rathbone, LLP ("Javitch" or "law firm") to collect the delinquent funds.  Javitch's attempts to collect the debt eventually led it to file suit against Gionis in an Ohio state court on November 24, 2003.

No mention of attorney fees appeared in the state court complaint; but Javitch did attach an "Affidavit of Indebtedness & Debt & Non-Military & Contract" ("Affidavit") signed by Erica Vick (a Direct Merchant agent), paragraph 4 of which reads, in part:

> The [credit card] agreement specifically provides that Direct Merchant's
> Credit Card Bank is entitled to recover, *to the extent permitted by applicable law*, its

_____

[*] The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

1

> reasonable attorney's fees and costs incurred in any action to enforce its rights under the agreement.

(JA 20) (emphasis added). Though Ohio law does not permit recovery of attorney fees in connection with any claim involving "personal, family, or household" debt, *see* Ohio Rev. Code Ann. § 1301.21, (which the parties do not dispute), Gionis contends that this language in the Affidavit misleads "the least sophisticated consumer" to think otherwise, and thereby violates the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. §§ 1692–1692o. In any event, the state court suit against Gionis was settled between the parties.

Gionis then filed her own lawsuit (a class action) against Javitch in federal court. She contended that the law firm violated various provisions of the FDCPA and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01, *et seq.*, by attaching the threatening and misleading Affidavit to the state court complaint.

However, the matter never reached a jury. On cross motions for summary judgment, the district court found Javitch (a "debt collector" under the Act, *see Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)) was (1) not protected by witness immunity nor litigation immunity, and (2) liable under two provisions of the Act—15 U.S.C. §§ 1692e(5) and 1692e(10)—for attaching the Affidavit to the state court complaint. The district court dismissed Gionis's remaining claims.

Unresolved issues of class certification, notice, and remedies remain pending in the district court. Therefore, Javitch filed this interlocutory appeal (purportedly under the "collateral order doctrine") challenging the district court's denial of its immunity claims. Javitch also petitioned for an interlocutory appeal on the liability issues, *see* 28 U.S.C. § 1292(b), which another panel of this Court granted. The two appeals were later consolidated.

I

Though neither party disputes our jurisdiction to hear these issues, we have "a duty to consider sua sponte whether appellate jurisdiction is properly invoked[,]" *Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir. 1998), and a recent case, *Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944 (6th Cir. 2006), makes clear that we have no independent jurisdiction over Javitch's immunity claims under the collateral order doctrine. *See also Delawder v. Platinum Fin. Servs. Corp.*, 189 F. App'x 369, 371 (6th Cir. 2006) (unpublished). But, fortunately for Javitch, the liability issues (which we have already agreed to hear under 28 U.S.C. § 1292(b)) "cannot be resolved without addressing" Javitch's claims of immunity. *See Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 797 (6th Cir. 1998). That is to say, a favorable finding on the immunity issues may forestall liability under the Act. *See Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 679 (D.C. Cir. 1996). Hence, we may properly invoke pendent appellate jurisdiction over these issues. *See Chambers*, 145 F.3d at 797; *Gilda Marx, Inc.*, 85 F.3d at 679.

Unfortunately for Javitch, neither litigation immunity nor witness immunity shields it from liability under the Act. With respect to litigation immunity, Javitch maintains that "[t]he Right to Petition under the First Amendment has been construed by Courts to afford *qualified* immunity [to lawyers engaged in litigation]" (JA 38) (emphasis added), and, at the same time, "[l]awyers possess an *absolute* privilege [under common law] concerning statements they make which are reasonably related to and made in the course of judicial proceedings, and are likewise *absolutely* immune from suit for claims which are based on such statements." (JA 54) (emphases added.) Accepting these propositions as true as applied to Javitch would, of course, undercut *Heintz v. Jenkins*—where the Supreme Court held that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation.*" 514 U.S. at 299 (emphasis added);

3

*see also* 15 U.S.C. § 1692a(6). Javitch does not dispute that it "'regularly' engage[s] in consumer-debt-collection activity." *See Heintz*, 514 U.S. at 299. So any discussion of litigation immunity as applied to lawyers in general (those who do not regularly engage in consumer-debt-collection activity) is of no help to Javitch. The Supreme Court has already said that lawyers, in their function as debt collectors, are covered by the Act.

Javitch also contends that "statements contained in[,] and attached to, the state court complaint cannot serve as the basis for a claim here under the [common law] doctrine of absolute witness immunity." (JA 45.) This assumes that Javitch is a "witness." But it provided no testimony in the Affidavit; only Erica Vick (the Direct Merchant agent) did. Javitch merely attached the Affidavit to the state court complaint, and it points to no authority purporting to extend witness immunity to those who merely attach affidavits.

Even so, we have held that while "testimony presented in the form of an affidavit may be protected under absolute witness immunity," *Todd v. Weltman*, 434 F.3d 432, 439 (6th Cir. 2006), the immunity does not extend to "complaining witnesses"—those who help instigate the judicial process by swearing to tell the truth, *id.* at 444. Vick's Affidavit (as in *Todd*) was attached to a state court complaint, and thus "set the wheels of government in motion by instigating a legal action." *Id.* (quoting *Wyatt v. Cole*, 504 U.S. 158, 164-65 (1992)) (internal quotation marks omitted). So Vick and, especially, Javitch are not entitled to absolute witness immunity. (But Vick, of course, cannot be sued under the Act, for she is not a "debt collector." *See* § 1692a(6).)

II

We turn now to the issue of whether summary judgment in Gionis's favor was proper. There are no genuine issues of material fact—no dispute as to what was said, who said it, or where it was

4

said; and none about who attached it to the complaint. All that remains is to apply these "basic facts" to the applicable legal standard. *See, e.g.*, *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (en banc) (applying deliberate-indifference standard to facts); *Weaver v. Shadoan*, 340 F.3d 398, 406 (6th Cir. 2003) (applying the probable-cause standard to facts); *Scott v. Clay County*, 205 F.3d 867, 877 n.16 (6th Cir. 2000) (same). So review under summary judgment was appropriate, *see* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986), and we review *de novo*, *see Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). Hence, the issue: Did Javitch violate § 1692e(5) or § 1692e(10) of the Act when it attached Erica Vick's Affidavit, which mentioned recovering attorney fees "to the extent permitted by applicable law," to the state court complaint?

The purpose of the Act is "to eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e).[1] Section 1692e of the Act states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." And, "without limiting the general application of the foregoing," *id.*, § 1692e(5) prohibits a "threat to take any action that cannot legally be taken or that is not intended to be taken." Section 1692e(10)

---

[1] After oral arguments, Javitch submitted a letter under Rule 28(j), *see* Fed. R. App. P. 28(j), providing the Court with a citation to a recent Seventh Circuit case, *Beler v. Blatt*, 480 F.3d 470 (7th Cir. 2007). *Beler* questions (but does not decide) whether the Act regulates the content of state court filings in particular. *But see Veach v. Sheeks*, 316 F.3d 690, 691-92, 693 (7th Cir. 2003) (applying the Act to the content of "a summons and complaint for Indiana small claims court proceedings"). But the reason for the *Beler* court's incertitude is not entirely clear from its opinion, and thus *Beler* lends no particular support to Javitch's position.

And though it postures the *Beler* case as a "supplemental" citation, Javitch's appellate briefs do not provide any reason to think that the Act does not cover the content of *state* court filings in particular, *see United States v. Nason*, 9 F.3d 155, 163 (1st Cir. 1993) ("[A] letter submitted pursuant to [R]ule 28(j) *cannot* raise a new issue.") (internal quotation marks omitted) (alterations in original); and the Court sees none.

similarly prohibits, in relevant part, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt[.]"

In a strict sense, neither § 1692e(5) nor § 1692e(10) has been violated here. The Affidavit only says Direct Merchant "is entitled to recover, *to the extent permitted by applicable law*, its reasonable attorney's fees and costs incurred in any action to enforce its rights under the agreement." (JA 20) (emphasis added). Because the credit card agreement (though not the Affidavit) defines "applicable law" as "federal law, and laws of Arizona," and because the case was filed in Ohio, there was (technically speaking) no "threat to take any action that cannot *legally* be taken," § 1692e(5) (emphasis added), nor "use of any *false* representation or *deceptive* means to collect" Gionis's debt, § 1692e(10) (emphases added).

But the Act does not require such a sophisticated interpretation. Quite the contrary, in fact: Courts must view any alleged violation through the lens of the "least sophisticated consumer," *see Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)—the usual objective legal standard in consumer protection cases, *see Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* "This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes." *Id.* at 1319. The standard thus serves a dual purpose: "it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.

6

Since Javitch sued in Ohio and the Affidavit leaves the "applicable law" undefined, the least sophisticated consumer (who is both "naive" and "below-average sophistication ," *see id.* at 1319) would, without question, conclude the "applicable law" to be Ohio law. (It does not matter that a more sophisticated consumer would have discovered that the "applicable law" is actually "federal law, and laws of Arizona" under the credit card agreement. (JA 167.)) And the phrase "to *the* extent permitted" suggests (at least to the least sophisticated consumer) that *some* extent is in fact permitted under Ohio law. "Why else," the consumer would wonder, "would Javitch attach this language to the complaint if Ohio law does *not* permit attorney fees here?"

Yet the threatening language appeared in a court filing—where one seeks remedies, not make empty threats—and that arguably could be understood by the least sophisticated consumer as an actual "attempt" to collect attorney fees (not a "threat" per se) and thus not actionable under §1692e(5). *See* §1692e(5) (prohibiting the"*threat* to take any action that cannot legally be taken" (emphasis added)). After all, "What other reason would the statement appear in a court proceeding if Javitch were not *attempting* to collect attorney fees?," the consumer may again ask. A few lower courts, in fact, have refused to find a violation under § 1692e(5) where "[d]efendants did not *threaten* to take [an unlawful] action, but actually took it by filing the complaint." *See, e.g.*, *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005) (emphasis in original) and cases cited therein.

But, in this context, "attempts" and "threats" are not necessarily mutually exclusive concepts, for when we keep the Act's overarching principles in mind—"to eliminate abusive debt collection practices by debt collectors," § 1692(e), and to prevent "false, deceptive, or misleading representation[,]" § 1692e—whether the Affidavit's metaphysical description is more an "attempt"

7

or more a "threat" is essentially wordplay. No semantical recasting alters the intimidating effect on the least sophisticated consumer: that she "would be confused, and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity, in order to avoid the possibility of having to also pay [the debt collector's] attorney fees at some later date." *Gionis v. Javitch*, 405 F. Supp. 2d 856, 867 (S.D. Ohio 2005).

This is so because even if the least sophisticated consumer would view the Affidavit's attorney fees language as an actual "attempt" to collect attorney fees, the attempt would nonetheless embody an ongoing threat that likely higher attorney fees would be assessed so long as the litigation continues—an action that cannot legally be taken in Ohio. *See* § 1692e(5). Suppose, on the other hand, the least sophisticated consumer would view the Affidavit's attorney fees language as a simple threat (not an actual attempt) to collect attorney fees at some later date (should Javitch choose to). That threat is likewise one that cannot legally be taken in Ohio.

Javitch's failure to assert the attorney fees language in the complaint's "prayer of relief" section does not cure the threat. *See Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) ("When there are two different accounts of what a debtor actually owes the creditor, that one version is the correct description does not save the other . . . under the unsophisticated debtor standard . . . ."). The least sophisticated consumer would not realize what a trained lawyer would—that a failure to assert a request for attorney fees in a complaint's "prayer of relief" generally bars recovery of such relief. *See* Ohio Civ. P. R. 8(A). Hence, either way we slice it, an unlawful "threat" to collect attorney fees was made in the Affidavit, violating § 1692e(5), which also amounted to a "false representation or deceptive means to collect or attempt to collect a[] debt[,]" violating § 1692e(10).

8

Javitch believes that attaching the Affidavit to the complaint would be no different than attaching the entire credit card agreement to the complaint, and that to hold it liable here would "effectively prohibit creditors from including fee-shifting terms in their cardholder agreements, and hamper their efforts to enforce [those] terms." (Appellant's Br. 22.) But this ignores two significant distinctions. Foremost, had Javitch attached the credit card agreement to the complaint, there would be less room to argue that the least sophisticated consumer would feel threatened in the same manner as here since the agreement explicitly defines "applicable law" as "federal law, and laws of Arizona[.]" (JA 167.) The Affidavit does not (conveniently) make this clarification, and such an omission leaves room for the least sophisticated consumer to conclude the "applicable law" to be Ohio law.

There is another distinction. The Affidavit chose to point out the fact that the "agreement *specifically* provides" for recovery of attorney fees under the applicable law (and, again, does so without mentioning what that "applicable law" is). (JA 20) (emphasis added.) Certainly, this is more threatening than attaching the entire Agreement—where no terms or conditions are "specifically" isolated for the consumer's attention. *See Barany-Snyder v. Weiner*, No. 06-2111, 2007 WL 210411, at *8 (N.D. Ohio Jan. 24, 2007) (unpublished) (discussing this distinction). Hence, contrary to Javitch's thinking, our holding does not "prohibit creditors from including fee-shifting terms in their cardholder agreements, [or] hamper their efforts to enforce terms." (Appellant's Br. 22.)

One more hurdle remains in this matter: Javitch did not utter the statement in the Affidavit; Erica Vick did. Javitch therefore contends that imputing Erica Vick's words onto it would essentially amount to impermissible "vicarious liability." This is not so. Had Vick independently

made the threat to Gionis (with no assistance from Javitch), the imposition of liability on Javitch for Vick's threatening words could be classified as "vicarious liability." *See* Restatement (Third) of Torts § 13 (2000). But Javitch did not passively stand by as Vick made the threat. It instead chose to communicate the threatening language to Gionis—in a lawsuit no less. And any consumer, especially the least sophisticated one, could view the very act of doing so as an adoption of Vick's threat—and thus a "threat" within itself. *Cf. United States v. Cox*, 957 F.2d 264, 266 (6th Cir. 1992) ("A threat is . . . an appearance to the victim.") (internal quotation marks omitted). This is all the more true in Ohio given that Ohio's Civil Procedure Rule 10(c) provides that "[a] copy of any written instrument attached to a pleading is part of the pleading for *all* purposes." Ohio Civ. P. R. 10(c) (emphasis added). Hence, to hold Javitch liable for *its own* actions does not invoke vicarious liability.

III

Accordingly, we conclude that Javitch made a "threat to take an[] action that cannot legally be taken," in violation of § 1692e(5), which also amounted to "false representation or deceptive means to collect or attempt to collect a[] debt[,]" in violation of § 1692e(10). For these reasons, we **AFFIRM** the district court's grant of summary judgment.

10

GEORGE C. STEEH, District Judge, dissenting.


I respectfully dissent.

The underlying facts in this case are straightforward. Appellee Sherry Gionis was sued in an Ohio state court for a credit card debt owing to Direct Merchant's Credit Card Bank (DMCCB). Gionis signed an agreement, at the time she took on the credit card, that the applicable law would be that of Arizona.[1] An affidavit filed by the appellant-attorneys to collect the unpaid debt included language that DMCCB "is entitled to recover, to the extent permitted by applicable law, its reasonable attorney's fees and costs incurred in any action to enforce its rights under the agreement." As noted by the majority, the case was promptly settled, and DMCCB never sought any attorney's fees.

Given the particular facts of this case, it unreasonably stretches the statutory language to conclude that the action complained of in this lawsuit violated the Fair Debt Collection Practices Act.[2] As my colleagues concede, "[i]n a strict sense, neither § 1692e(5) nor § 1692e(10) has been violated here." Nowhere did the complaint or affidavit affirmatively state that attorney's fees would

---

[1]Although it appears that appellant waived its argument that the case may be disposed of on the basis that Arizona law—which allows the collection of attorney's fees in connection with consumer debt—governed Ms. Gionis' contract with DMCCB, the fact remains that the cardholder agreement is in the record and there is no dispute that it contains the Arizona choice of law provision.

[2] This action certainly does not fall within the scope of practices the FDCPA was designed to curb, such as abusive phone calls, false and deceptive debt collection letters, and other patently unfair antics described in the statute's legislative history. *See Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 398 (6th Cir. 1998). In fact, the careful placement of the reference to attorney fees in the affidavit, rather than the complaint, and the fact that plaintiff made no affirmative representation that it was entitled to attorney fees, indicates an attempt on the part of the plaintiff to comply with the FDCPA.

11

be sought. Furthermore, there is no record that appellee felt undue pressure resulting from the statement in the affidavit, or that there was any prior contact between appellee and appellant which might support an inference that the law firm threatened the collection of its fees from the perspective of "the least sophisticated consumer."

I cannot agree that any authority cited by appellee lends significant support to her position. There is no precedent supporting appellee's argument that a complaint which itself did not make claim to attorney's fees, appending an attachment which did not state an affirmative intention to collect attorney fees, may nonetheless be found to have violated §§ 1692e(5) or (10). For instance, in the case of *Veach v. Sheeks*, 316 F.3d 690 (7th Cir 2003), relied on in part by appellee, the Seventh Circuit's ruling actually reverses the lower court's entry of summary judgment for the defendant on the FDCPA claim because the defendant debt collector, in addition to claiming that the debt owed included attorney fees, had represented the amount of the debt to be three times the actual debt, i.e. applying treble damages, where such an award may only be made by court order. Furthermore, the mention of attorney's fees was an affirmative statement in the complaint itself that such fees were owed,[3] rather than a mere recitation of text from a cardholder agreement in an affidavit. *See* id. at 693. *Veach* is so factually distinguishable from the instant case that the opinion lends no assistance in this decision.

In the recent, unpublished case of *Barany-Snyder v. Weiner*, No. 06-2111, 2007 WL 210411 (N.D. Ohio Jan 24, 2007) (unpublished), in which attorneys for the Baldwin Wallace College were sued for allegedly improper collection of unpaid school debt, the district court held that "[m]erely

---

[3] "[T]he Defendant is indebted to the Plaintiff in the sum of $ 1,050 as treble damages for a bad check in the sum of $ 350.00, plus reasonably [sic] attorney fees as permitted by law." Id. at 693.

attaching an agreement which includes an attorneys' fee provision to a complaint and a brief does not constitute a threat to exercise that provision."[4]  This holding followed its discussion of the elements required for a claim under § 1692e(5): "(1) a threat to take legal action and (2) the inability to take that action lawfully."  Id. at *7, citing *Wright v. Asset Acceptance Corp.*, No. C-3-97, 375, 1999 U.S. Dist. LEXIS 20675, *5 n. 7 (S.D.Ohio Jan. 3, 2000).   I agree with the decision rendered by Judge Gaughan in that case, and I cannot find a meaningful distinction between attaching a two page "revolving agreement" that was the subject of the lawsuit in the *Barany-Snyder*[5] case and quoting a provision of the cardholder agreement in the instant case.[6]  Here, even if appellant could not lawfully seek attorney's fees in Ohio, there is no threat to do so stated or implied in the complaint or affidavit.

Although Judge Gaughan in *Barany-Snyder* distinguished the district court's decision in *Gionis*, pointing out that the language complained of in the *Gionis* case was contained in an affidavit, rather than a copy of the cardholder agreement, I find her reasoning equally applicable to this matter, and cannot find that under the facts of this case, even the "least sophisticated consumer" would

---

[4]Discussing, in part, the holding of the court below in the instant case.  *See Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 866 (S.D. Ohio 2005).

[5] Notably, the two page "revolving agreement" did not contain, as the cardholder agreement in the instant case did, a choice of law provision indicating applicable law of any state other than Ohio.

[6]In fact, the two page "revolving agreement" contained language that was arguably more "threatening":

> I/We understand that upon default of any, or all of the terms and conditions of this credit agreement and upon proper service of a NOTICE OF DEFAULT by the College, all signers immediately become, at the option of the college, liable for attorney fees and/or actual or reasonable collection costs which may be added to the total amount due.

13

conclude that defendant *threatened* to take illegal or unintended action, or b) that defendant used a *false representation or deceptive means* to collect or attempt to collect a debt. I would reverse the district court's grant of summary judgment.