ALICE M. BATCHELDER, Circuit Judge,
dissenting.
We are the first circuit court to interpret Kentucky Revised Statutes Annotated § 360.010. The district court concluded quite reasonably that PRA complied with state law in attempting to collect the debt owed by Stratton. The majority opinion reverses, based on a different, but plausible, construction of § 360.010. We have said repeatedly “that Congress did not turn every violation of state law into a violation of the FDCPA.” Currier v. First Resolution Inv. Corp., 762 F.3d 529, 537 (6th Cir.2014). The majority construes the statute differently than PRA and the district court do, and based on this first-impression construction holds that PRA thus violated federal law. This “gotcha!” maneuver impermissibly expands the scope of the FDCPA, exposing debt collectors to liability under federal law whenever we later determine a debt collector’s reasonable construction of an as-yet uninterpreted state law is wrong. I respectfully dissent.
I.
The majority asks — and then answers— the wrong question. The question is not, “can someone collect interest if they agree not to collect interest?” Maj. Op. at 447. The question instead is whether someone can collect statutory interest after they agree not to collect contractual interest. And while the plain text of the statute might answer the question raised by the majority, it does not answer the question posed by this case.
Section 360.010 states,
The legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate[;] ... and any such party or parties, and any party or parties who may assume or guarantee any such contract or obligation, shall be bound for such rate of interest as is expressed in any such contract, obligation, assumption, or guaranty, and no law of this state prescribing or limiting interest rates shall apply to any such agreement or to any charges which pertain thereto or in connection therewith....
The one Kentucky case to comment on this provision, Reliable Mechanical, Inc. v. Naylor Industrial Services, Inc., parroted the statute: “Absent a contractually agreed upon rate, the appropriate rate of interest is governed by statute.” 125 S.W.3d 856, 857 (Ky.Ct.App.2003).
*453 Two other district courts have construed prejudgment interest rate statutes nearly identical to Kentucky’s and both have concluded that charging post-charge off interest under a state’s default prejudgment interest rate is permissible “even if interest was waived at the contractual rate.” Peters v. Fin. Recovery Servs., Inc., No. 14-cv-00489, — F.Supp.3d -, -, 2014 WL 4723287, at *2 (W.D.Mo. Sept. 18, 2014) (interpreting Missouri Revised Statutes § 408.020, which states, “[creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon”); see also Grochowski v. Daniel N. Gordon, P.C., No. C13-343 TSZ, 2014 WL 1516586, at *3 n. 2 (W.D.Wash. Apr. 17, 2014) (holding that “[cjontrary to plaintiff’s assertion, Capital One’s decision to forego the contractual rate of interest did not relinquish its right to seek prejudgment interest at the statutory rate,” under Washington Revised Code § 19.52.010, which states, “Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties.... ”).
PRA argues that “[bjecause there was no contractually agreed upon rate being assessed after charge-off, the statutory rate under KRS § 360.010 applied as a matter of law.” The district court agreed, reasoning that although “a creditor may not collect both contractual interest and statutory interest for the same time period.... Stratton points to no authority that even suggests that the decision to forego contractual interest means that statutory interest may not be collected.” The district court said that “[bjecause GE was no longer charging interest under the contract,” GE was not “bound for such rate of interest,” meaning the legal rate of interest applied. Thus, only assessment or enforcement of the contract rate — not merely agreement to a different, higher rate— displaces the legal rate of interest.
Further evidence that this interpretation is at least reasonable is found when comparing § 360.010 to § 360.040, which governs postjudgment interest. Section 360.040 provides, “A judgment shall bear twelve percent (12%) interest compounded annually from its date. A judgment may be for the principal and accrued interest;' but if rendered for accruing interest on a written obligation, it shall bear interest in accordance with the instrument reporting such accruals, whether higher or lower than twelve percent (12%).” Because the legal rate of interest is displaced “whether higher or lower than twelve percent,” it is harder to construe § 360.040 as a default interest-rate floor. The legal rate of interest in § 360.010, on the other hand, is displaced only where the payment of interest is “in excess of’ the legal rate, providing some support for PRA’s argument that the legal rate of prejudgment interest applies absent an assessment of the higher contractual rate.
We should dismiss Stratton’s complaint, however, whether or not we agree with PRA’s interpretation of § 360.010. Prior to this case, no court — either federal or state — had held that an unassessed contractual prejudgment interest rate precludes imposition of the default legal prejudgment interest rate. And the district court’s decision — supplemented by a comparison with Kentucky’s postjudgment interest statute — demonstrates both that the plain language of the statute does not resolve this dispute, and that PRA’s interpretation is a reasonable one.
To impose liability on PRA under the FDCPA for its reasonable resolution of a state-law question that federal and state courts have not only yet to resolve, but have never even addressed, extends the *454 reach of the FDCPA too far. See Carlson v. First Revenue Assur., 359 F.3d 1015, 1018 (8th Cir.2004) (“The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.”). Creditors under this scheme are now faced with a Hobson’s choice: do nothing and go bankrupt, or attempt to collect a debt and risk violating federal law. And, of course, the real victims are high-risk consumers for whom credit becomes more expensive.
II.
Particularly pernicious is the majority’s holding that Stratton has stated a claim under § 1692e(5). Section 1692e(5) prohibits “[t]he threat to take any action that cannot legally be taken or that is not intended to be taken.” In this case, however, PRA actually filed a state court complaint; it did not threaten to do so.
We instructed in Hartman v. Great Seneca Financial Corp., 569 F.3d 606, 611 (6th Cir.2009), that “[w]hen interpreting the FDCPA, we begin with the language of the statute itself.” (internal quotation marks omitted). Although § 1692e broadly prohibits a debt collector from using “any false, deceptive, or misleading representation or means in connection with the collection of any debt,” Stratton pleaded a violation of § 1692e(5), which specifically requires a “threat.” The majority is right that we may “proscribe other improper conduct which is not specifically addressed” under § 1692e, but Stratton has not alleged a violation of § 1692e and § 1692e(5) does not authorize the majority to ignore the specific textual requirement.
To hold that PRA threatened to take illegal action the majority must mean either (1) filing a complaint can be a “threat” within the meaning of § 1692e(5), or (2) § 1692e(5) penalizes even actions that have already been taken. Neither proposition is true.
A.
We have never held that filing a complaint is itself a “threat” within the meaning of § 1692e(5). The source of authority for the majority’s contrary conclusion is our unpublished opinion in Gionis v. Javitch, Block, Rathbone, LLP, 238 Fed.Appx. 24 (6th Cir.2007). But in Gionis the actual “threat” to recover unauthorized attorney fees appeared in an affidavit appended to the complaint, not in the complaint itself. We said explicitly that the “unlawful ‘threat’ to collect attorney fees was made in the Affidavit,” id,, at 29, which was intended to communicate directly with the debtor; the complaint was not itself the “threat.” Both Foster v. D.B.S. Collection Agency, 463 F.Supp.2d 783 (S.D.Ohio 2006), and Poirier v. Aleo Collections, Inc., 107 F.3d 347 (5th Cir.1997), are similarly distinguishable.
The reason for excluding complaints from “threat” liability should be clear. If filing a court complaint is per se a “threat,” then every time a debt collector loses in court it has threatened to take action it may not legally take — it has thus violated the FDCPA. The “least sophisticated consumer” standard does not mean that every time a debt collector makes a reasonable mistake of fact or law it has thus violated federal law. To hold that Congress contemplated such a scheme defies belief.
I agree with the majority that “formal pleadings” are not “entirely exempt from the FDCPA.” Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. 2007). In Todd v. Weltman, Weinberg & Reis Co., L.P.A., 434 F.3d 432, 435 (6th Cir.2006), for instance, we held that a law *455 firm that represented creditors was not exempt from liability under the FDCPA where it filed affidavits seeking garnishment of funds but “did not conduct a debt- or’s exam, did not undertake discovery as to whether Plaintiff possessed non-exempt assets, and otherwise had no factual basis for believing that Plaintiffs bank account contained non-exempt assets.” And in Currier; we held that “filing and maintaining an invalid lien” triggered liability under § 1692e(5). 762 F.3d at 535; see also Hartman, 569 F.3d at 616 (holding that litigation activities are not immune from FDCPA liability).
As I discuss in Part I, however, PRA’s conduct in this case is different. PRA reasonably construed an ambiguous state law that had yet to be interpreted by any court. This is precisely the kind of technical, state-law violation the FDCPA does not reach.
B.
Nor does § 1692e(5) penalize completed acts. Several district courts have erroneously premised liability on actions already taken. See, e.g., Foster, 463 F.Supp.2d 783; Poirier, 107 F.3d 347. Their reasoning, unsurprisingly, has nothing to do with what § 1692e(5) actually says: “The opposite conclusion would be akin to attaching liability to one who merely threatens a tortious act while absolving one who unabashedly completes it. It is safe to say that such an interpretation veers sharply from the legislative purpose behind the FDCPA.” Sprinkle v. SB&C Ltd., 472 F.Supp.2d 1235,1247 (W.D.Wash.2006).
But giving effect to the text of § 1692e(5) does not absolve a creditor from liability. A creditor who files a complaint seeking to collect a false debt, for example, risks liability under numerous FDCPA provisions, including § 1692e(2)(A), § 1692f(l), and § 1692e. Stratton has even pleaded violation of some of these provisions here. A creditor does not “avoid the strictures of. the FDCPA,” Marchant v. U.S. Collections W., Inc., 12 F.Supp.2d 1001, 1006 (D.Ariz. 1998), if we give effect to the plain language of § 1692e(5).
The unpublished (and, hence, nonbinding) opinion in Gionis described the difference between an attempt to collect a debt via a complaint and a “threat” as solely a “metaphysical” distinction created by “semantical recasting.” 238 Fed.Appx. at 28-29. I doubt the recipient of a murder threat would so easily dismiss a distinction between the threat, on the one hand, and attempted murder or murder, on the other. By labeling statutory interpretation “semantics” (which, after all, approximates its dictionary definition), the Gionis court dismissed the shocking proposition — required by the usual rules of statutory interpretation — that by including the word “threat” in § 1692e(5) Congress actually meant something. See Delawder v. Platinum Fin. Servs. Corp., 443 F.Supp.2d 942, 948 (S.D.Ohio 2005) (“[R]egardless of the legality of Defendants’ filing of the Ironton complaint, Defendants did not threaten to take that action, but actually took it by filing the complaint.”); see also Dicesari v. Asset■ Acceptance LLC, No. ll-CV-6815, 2012 WL 4108944, at *3 (E.D.Pa. Sept. 18, 2012) (“Because the Plaintiff only alleged an actual action taken — namely, the filing of the state court complaint — and points to no other threats of action, the Court dismisses Plaintiffs claim under § 1692e(5).”); Okyere v. Palisades Collection, LLC, 961 F.Supp.2d 508, 520 (S.D.N.Y.2013) (“Because section 1692e(5) prohibits only threats, and because the complaint alleges an illegal act, not a threat, it does not come within section 1692e(5).”); Wehrheim v. Secrest, No. IP 00-1328-C-T/K, 2002 WL 31242783, at *5 *456 (S.D.Ind. Aug. 16, 2002) (“Plaintiffs claims in the instant case are based upon actions actually taken by Defendant. The court rejects Plaintiffs attempt to equate threats of action with actions actually taken”).
But the fundamental error made by Gionis and the majority in this case is in applying the “least sophisticated consumer” standard. This standard affects how we construe a creditor’s conduct; it is not a principle of statutory interpretation. We misapplied this standard in Gionis, where we admitted that even though the debt collector had not actually violated § 1692e(5), it was liable anyway. We said “there was (technically speaking) no ‘threat to take any action that cannot legally be taken,’ ” because “applicable law” permitted the recovery of attorney fees. Id. at 28. As the majority does here, Gionis rewrote § 1692e(5) to afford greater protection to debtors than Congress intended. After Gionis, apparently, the statute now prohibits the “threat to take action that a debtor might think cannot legally be taken.”
The only “metaphysical” distinction is the majority’s attempt to distinguish statements made in the body of the complaint from statements made in the prayer for relief. The majority thinks that “[slaying that Stratton owed $2630.95 plus whatever interest the court chooses to award is simply not the same as saying that Stratton owed $2630.95 plus 8% interest from the date GE charged off her account.” Maj. Op, at 451. This distinction is meaningless to the hypothetical least sophisticated consumer. The majority opinion is premised on the belief that the least sophisticated consumer is both a genius and an idiot.
I confess that this distinction makes no sense to me. Under the majority’s reasoning we are either authorized to award prejudgment interest under § 360.010, or we are not. If not, we cannot “exercise our discretion” and award interest anyway. Distinguishing an appeal to the court’s discretion from an attempt to collect a fixed amount is even inconsistent with Gionis, where we said that a debt collector violated § 1692e(5) even though an affidavit attached to the state-court complaint mentioned recovering attorney fees only “to the extent permitted by applicable law.” 238 Fed.Appx. at 28. Perhaps, despite invoking Gionis repeatedly, the majority realizes Gionis went too far.
I respectfully dissent.