RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0041p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

DAWSON W. WISE,

                *Plaintiff-Appellant,*

    *v.*

ZWICKER & ASSOCIATES, P.C.; ANNE SMITH; DEREK
SCRANTON,

                *Defendants-Appellees.*

No. 14-3278

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:12-cv-01653—Sara E. Lioi, District Judge.

Argued: December 3, 2014

Decided and Filed: March 12, 2015

Before: SILER, SUTTON, and STRANCH, Circuit Judges.
_____

## COUNSEL

_____

**ARGUED:** Theodore E. Meckler, Spokane, Washington, for Appellant. Boyd W. Gentry, LAW OFFICE OF BOYD W. GENTRY, Beavercreek, Ohio, for Appellees. **ON BRIEF:** Theodore E. Meckler, Spokane, Washington, for Appellant. Boyd W. Gentry, LAW OFFICE OF BOYD W. GENTRY, Beavercreek, Ohio, for Appellees.
_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge. Plaintiff Dawson Wise appeals the district court's judgment on the pleadings dismissing his claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq., and the Ohio Consumer Sales Practices Act (OCSPA), Ohio

1

Rev. Code §§ 1345.02, 1345.03. The claims arise from an attempt by the defendants—two lawyers and their law firm—to collect attorney's fees pursuant to a consumer credit card agreement (Agreement). Ohio does not enforce provisions for the collection of attorney's fees in such consumer contracts, but Utah, the state designated in the Agreement's choice-of-law clause, does. Wise contends that Ohio law governs, barring the fees, and that the defendants' state court complaint was therefore a false or misleading representation or an unfair practice in violation of the FDCPA. The district court concluded on the basis of the pleadings and attached documents that Utah law applies to the issue and dismissed the case. Because the pleadings do not resolve the question of which law would govern the attorney's-fee question, we REVERSE and REMAND the case for further proceedings on the federal claim. On the state law claim, however, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Wise is a resident and citizen of Akron, Ohio. American Express Centurion Bank (American Express) extended an offer of credit to Wise by sending him a credit card and accompanying "Agreement Between American Express Credit Cardmember and American Express Centurion Bank." *See* R. 1-2. Wise accepted the offer by keeping and using the credit card. *Id.* at PageID 13 ("When you keep, sign, or use the Card issued to you … you agree to the terms of this Agreement."). The Agreement provides:

> This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah.

*Id.* at PageID 16. It also provides, in the event of default: "You agree to pay all reasonable costs, including reasonable attorneys' fees, incurred by us [] in connection with the collection of any amount due on your Account." *Id.* at PageID 15.

Wise defaulted on the credit card account, and American Express retained Zwicker & Associates, P.C., to collect the debt. Two attorneys at the firm, Derek Scranton and Anne Smith, contacted Wise and demanded payment on the debt, as well as attorney's fees for their collection activities. They also filed suit in the Ohio Court of Common Pleas in Summit County for breach

of contract and unjust enrichment.  The prayer for relief in the state court lawsuit recites, in relevant part, "WHEREFORE, the Plaintiff, AMERICAN EXPRESS CENTURION BANK demands judgment against Defendant(s), DAWSON WISE, on Counts One [Breach of Contract] and Two [Unjust Enrichment] of its Complaint, in sum of [the amount owed] … plus attorney fees."  R. 1-1, PageID 12.  Wise subsequently filed for bankruptcy, staying the state court lawsuit.

Wise filed this putative class action lawsuit in the Northern District of Ohio against the two attorneys and their firm, seeking to represent consumers from whom they demanded attorney's fees.  Noting that Ohio law bars contracts that would require payment of attorney's fees on the collection of consumer debt, Wise contends that their demands for fees, both prior to and during litigation, violated the federal FDCPA and state OCSPA.

The defendants first filed an unsuccessful motion to compel arbitration, based on an arbitration clause in the Agreement.  Noting that the Agreement contained a choice-of-law clause designating Utah and that the application of Utah law to the arbitration question would not violate a fundamental policy of Ohio, the district court applied Utah law and determined that the case fell outside the scope of the arbitration clause.

The defendants then filed a motion for judgment on the pleadings, which the district court granted.  The court concluded that Utah law governed and allowed for the collection of attorney's fees, that there was therefore no violation of the FDCPA, and that the Agreement was not governed by the OCSPA.  Wise appealed.

## II.  DISCUSSION

### A.  Federal FDCPA Claims

Congress passed the FDCPA to address "what it considered to be a widespread problem" of consumer abuse at the hands of debt collectors.  *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992).  It sought to "eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. §1692(e).  In reaction to the size of the problem, it crafted "an extraordinarily broad" remedial statute.  *Frey*, 970 F.2d at 1521.  Among other

restrictions, the Act bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or using "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. In each section, Congress provided a non-exhaustive list of examples of banned practices.

Wise brought FDCPA claims under both the false-or-misleading-representations section, § 1692e, and the unfair-practices section, § 1692f, but both sets of claims reflect the same basic allegation. Wise contends that Ohio law barred American Express from obtaining attorney's fees on the collection of his debt; the actions of the defendants in representing American Express— demanding attorney's fees before the lawsuit and including the attorney's fees provision in the complaint's prayer for relief—were therefore misleading.[1]

Under the FDCPA, a plaintiff does not need to prove knowledge or intent to establish liability, nor must he show actual damages, which "places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 449 (6th Cir. 2014). In other words, if a debt collector seeks fees to which it is not entitled, it has committed a prima facie violation of the Act, even if there was no clear prior judicial statement that it was not entitled to collect the fees. *See id.* at 450–51. Notably, in *Jerman v. Carlisle, McNellie, Rini, Kramer, & Ulrich L.P.A.*, 559 U.S. 573 (2010), the Supreme Court held that mistakes of law regarding the FDCPA itself constitute violations of the Act for which a debt-collector attorney may not invoke the Act's bona fide error defense, 15 U.S.C. § 1692k(c). *Id.* at 604–05. The Supreme Court declined to address whether the defense is available for mistakes of law other than the FDCPA itself, *id.* at 580 n.4, but the discussion of the affirmative defense makes clear that mistakes of state law can give rise to liability.

---

[1]Specifically, Wise points to the following examples from the statute's nonexhaustive lists of false and misleading representations and unfair practices:

- § 1692e(2)(A): "The false representation of . . . the character, amount, or legal status of any debt."
- § 1692e(2)(B): "The false representation of . . . compensation which may be lawfully received by any debt collector for the collection of a debt."
- § 1692e(5): "The threat to take any action that cannot legally be taken . . . ."
- § 1692f(1): "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

As the district court noted, the present case turns on the question of whether Utah or Ohio law governs the contract. This court has generally characterized Ohio law as "prohibit[ing] creditors from recovering attorney's fees in connection with the collection of a consumer debt," *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). It would be more precise to describe Ohio law as refusing to enforce such fee-shifting provisions. "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as part of the costs of litigation." *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009). The exceptions to the rule are "when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant." *Id.* (citation omitted). Ohio common law historically refused to enforce contracts for fee-shifting, particularly in the context of collection on a defaulted debt. *See Miller v. Kyle*, 97 N.E. 372, 372–73 (Ohio 1911) ("In this state it has been firmly established, and long and constantly maintained, that such contracts for the payment of counsel fees upon default in payment of a debt will not be enforced."); *see also Leavans v. Ohio Nat'l Bank*, 34 N.E. 1089, syllabus[2] (Ohio 1893). In more recent years, Ohio courts have enforced fee-shifting provisions in a number of contracts, while maintaining the law of *Miller* and *Leavans*. *See Wilborn*, 906 N.E.2d at 401 & n.2. Finally, in 2000, the Ohio General Assembly passed a statute allowing for enforcement of fee-shifting provisions in certain commercial credit contracts. The statute limits the enforceability of such provisions to contracts for debt that is not "incurred for purposes that are primarily personal, family, or household," and only if that debt is in an amount greater than \$100,000. Ohio Rev. Code § 1319.02(A)(1).[3] The General Assembly's exclusion of "personal, family, or household" debt reinforces Ohio's common-law rule that such provisions are not enforceable.

If Ohio law clearly applied to this case, the analysis could end here; the fee-shifting provision would be unenforceable. *See Barany-Snyder*, 539 F.3d at 332 (discussing fee-shifting on a contract for personal indebtedness between an Ohio university and an Ohio student). And the defendants' demands for fees during and outside litigation would therefore be misleading.

---

[2] The syllabus of an Ohio Supreme Court opinion is binding law. Ohio Rep. Op. R. 2.2.

[3] This statute was previously codified at Ohio Rev. Code § 1301.21.

The Agreement states, however, that "This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah." And Utah law freely enforces fee-shifting provisions in consumer credit agreements: "A consumer credit agreement may provide for the payment of reasonable attorney's fees in the event of default and referral to an attorney." Utah Code § 70C-2-105.

The question presented is whether the Summit County Common Pleas Court would have applied Ohio or Utah law in deciding whether to enforce the fee-shifting provision.[4] Ohio has adopted sections 187 and 188 of the Restatement (Second) of Conflict of Laws to govern choice of law in contract disputes. *Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206, 220 (Ohio 2001). Because the Sixth Circuit, in cases under federal common law, has also adopted these sections and the Ohio approach to applying them, both Ohio and Sixth Circuit precedents shed light on the appropriate application of the Restatement. *See Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 570–71 (6th Cir. 2001) (quoting, in case brought under ERISA, *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606 (6th Cir. 1996), a case applying Ohio choice-of-law principles).

Before actually answering the choice-of-law question, we must respond to Wise's misunderstandings regarding choice-of-law analysis. Wise first argues that the court should apply the choice-of-law principles for torts because the FDCPA sounds in tort. But the issue on which there is a choice-of-law dispute is a contract issue—the enforceability of a provision of the Agreement. Wise then suggests that, if contract choice-of-law principles do apply, the court should take notice that the Agreement was a contract of adhesion—that American Express fully drafted the Agreement, including its designation of Utah law, without an opportunity for Wise to negotiate. He argues that the court should therefore disregard the choice-of-law provision of the contract because it does not reflect a choice of both parties. Regardless of whether the credit card agreement was adhesive under Ohio or Utah law, Wise's blanket conclusion is faulty. The

---

[4]Wise argues that *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24 (6th Cir. 2007), makes the choice-of-law provision irrelevant. The agreement at issue in *Gionis* did include a choice-of-law provision that favored a state in which fee-shifting provisions are enforceable, but the *Gionis* defendants waived the argument that the other state's law applied. *See id.* at 30 n.1 (Steeh, D.J., dissenting). All parties therefore agreed that Ohio law would govern the fee-shifting provision, rendering it unenforceable. *Gionis* held that an affidavit asserting a right under an unenforceable provision of a debt contract constitutes a misrepresentation of the debt and a threat to take action that cannot legally be taken. *Gionis*, 238 F. App'x at 29–30.

Restatement generally respects choice-of-law provisions, even in adhesion contracts.  But it addresses such contracts, specifying that the adhesive nature of a contract merits more careful scrutiny to ensure that application of the choice-of-law provision does not "result in substantial injustice."  Restatement (Second) of Conflict of Laws § 187, cmt. b.

The appropriate analysis therefore begins with § 187, which instructs courts to generally respect choice-of-law provisions.  S*ee Tele-Save Merchandising Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) ("Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties.").  The Restatement then sets out two exceptions. The court should apply the choice-of-law provision unless either

(a)     the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b)     application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2). The first exception does not apply to this case because there is a reasonable basis for the parties' choice of Utah law—American Express's Utah citizenship.

The second exception requires a more complicated, three-part analysis.  The court must determine (1) whether enforcing the fee-shifting provision of the Agreement would be contrary to a fundamental policy of Ohio; (2) whether Ohio has a materially greater interest in the determination of the particular issue; and (3) whether Ohio law would control the Agreement in the absence of the choice-of-law provision.  *See DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 924 (6th Cir. 2006) (applying federal common law).

As the district court recognized, it would be against the fundamental policy of Ohio to enforce the fee-shifting provision.  A rule of law "which is designed to protect a person against the oppressive use of superior bargaining power" will generally be interpreted to reflect the fundamental policy of a state.  *Century Bus. Servs., Inc. v. Barton*, 967 N.E.2d 782, 794–95 (Ohio Ct. App. 2011) (quoting Restatement § 187 cmt. g); *see also Tele-Save Merch. Co.,*

814 F.2d at 1123 (citing § 187 cmt. g). Ohio's policy against enforcing fee-shifting provisions in consumer-debt contracts protects customers like Wise against the creditor's superior bargaining power. A fee-shifting provision also encourages creditors to sue for defaulted debt and discourages debtors from fighting back. Fee-shifting presents "an ongoing threat that likely higher attorney fees would be assessed so long as the litigation continues." *Gionis*, 238 F. App'x at 29.

The second question is whether Ohio "has a materially greater interest than the chosen state in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 187(b)(2). For this question, Ohio courts evaluate the relationship of the two states to the agreement. Considering a consumer investment contract in *Sekeres*, the Ohio Supreme Court emphasized the location of the "act which ultimately created the contract" and the location of performance of the contract to determine whether Ohio had a "materially greater interest" than the chosen state. *Sekeres*, 508 N.E.2d at 942–43. In *Jarvis v. Ashland Oil, Inc.*, 478 N.E.2d 786 (Ohio 1985), the Ohio Supreme Court determined that Ohio did not have a materially greater interest in a contract where neither party to the contract was an Ohio citizen and the contract was not performed in Ohio. *Id.* at 789. Similarly, in the federal-law case of *DaimlerChrysler*, this court considered the location of the negotiation, execution, and performance of the contract. 448 F.3d at 927. The *DaimlerChrysler* court also considered the location of the parties with a relevant interest in the specific provision at issue. *Id.* ("[N]one of the Michigan entities involved in this litigation has an interest in which claimant prevails. The Plan will pay out the same amount of money regardless of to whom it is ultimately paid."). Considering these cases together, a few main contacts emerge as primary considerations in determining whether a state has a materially greater interest in enforcement of a provision: the citizenship of the parties to the contract; the locations of creation, negotiation, and performance of the contract; and the location of parties with an interest in the specific provision of the contract.

Returning to Wise's Agreement, there is not enough evidence about these contacts to determine whether Ohio has a materially greater interest than Utah. One party to the contract is an Ohio citizen. "[T]he act which ultimately created the contract" was Wise's use or retention of the credit card, which plausibly occurred in Ohio. *See Sekeres*, 508 N.E.2d at 943. Both Wise

(in Ohio) and American Express (in Utah) have an interest in the fee-shifting provision—one of them will be stuck with the lawyers' bill. The location of performance of the agreement is less clear. "[A] bank credit card, as in this case, is a three-party, three-part agreement between the bank, the consumer and the merchant." *Bank One, Columbus, N.A. v. Palmer*, 579 N.E.2d 284, 285 (Ohio Ct. App. 1989) (citing *Preston State Bank v. Jordan*, 692 S.W.2d 740 (Tex. App. 1985)). The promise by the bank is to advance funds to merchants on the consumer's behalf, in exchange for a promise by the consumer to repay those amounts on a monthly basis. *Jordan*, 692 S.W.2d at 742. There is no information in the record regarding the location of American Express's advances to merchants on Wise's behalf. As for Wise's promise to repay, the performance of such a promise occurs where the contract requires that the repayment be made. *See* Restatement (Second) of Conflict of Laws § 195. Although "[m]oney lent by a bank is usually repayable at the bank itself," *id.* § 195 cmt. d, the Agreement had a specific provision that overrode this default rule. The Agreement instructed Wise to send payments "to the payment address shown on your billing statement." R. 1-2, PageID 14. In light of the national character of American Express, it is plausible that the payment address is located in Ohio. *See Homa v. American Express Co.*, 558 F.3d 225, 232 (3d Cir. 2009) ("[American Express Centurion Bank] is a wholly owned subsidiary of [American Express Corporation], a New York corporation, and, despite the contract's statement that AECB is located in Utah, Homa must mail his credit card payments to Florida.") *abrogated on other grounds by AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011).

Instead of considering the relevant contacts, the district court simply noted that each state had some policy interest in the enforceability or non-enforceability of the provision and recited the statements from the Agreement itself: "Comparing both [Ohio's and Utah's] interests and considering that one party is located in Utah, holds the debtor's account in Utah, and entered into the Agreement in Utah, the Court cannot say that Ohio's interest is materially greater than Utah's." R. 40, PageID 416. The presence of a non-Ohio party to a contract and its general business operation outside the state is insufficient to determine that Ohio does not have a materially greater interest in the contract. *See, e.g., DaimlerChrysler*, 448 F.3d at 927.

The final inquiry is whether, "under the rule of § 188, [Ohio] would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(b)(2). Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

We must therefore also look to the factors articulated in § 6:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Application of §§ 6 and 188 of the Restatement requires a sensitive, fact-specific analysis. "The key to our analysis is that the choice of law principles found in the Restatement need not be given equal weight in every circumstance, nor are they intended to be exclusive. They also are relatively elastic, and in some cases equivocal." *Int'l Ins. Co.*, 86 F.3d at 606. "[E]ven when sections 6 and 188 are read together, it is clear they only provide a broad general framework for the resolution of choice of law issues in the context of a contract dispute. Within

that framework, a judge must balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision." *Id.*

In *Jarvis v. First Resolution Mgmt. Corp.*, 983 N.E.2d 380 (Ohio Ct. App. 2012) (discretionary appeal accepted), the Ninth District Court of Appeals—which takes appeals from the Summit County Court of Common Pleas—applied this test to a credit card agreement without a choice-of-law provision.   Id. at 387–88.   As relevant factors, the *First Resolution* court examined where the consumer primarily used the card (where the card issuer performed its obligation under the agreement), where she paid her bill (performing her obligation under the agreement), where the final act creating the agreement took place, and where she decided not to pay the amounts owed. *Id.* at 388.

A complete analysis of these factors would have revealed just how little information was in the record.   Again, the ultimate creation of the contract plausibly occurred in Ohio, and it is not clear where the performance of the contract occurred.   It is plausible from the complaint that Wise decided not to make payments in Ohio.   The contacts with Utah relate to the contract in ways not considered relevant by the *First Resolution* court:   One party to the contract is a Utah citizen, the initial offer was made from Utah, and the account is held in Utah.   It is plausible that many of the relevant contacts will relate more closely to Ohio, such that Ohio law would apply absent the choice-of-law provision, but any certainty on the issue would be premature.

In summary, by adopting § 187 of the Restatement, Ohio recognized two principles—that choice-of-law provisions in contracts are generally respected, and that § 187(2) contains exceptions to this principle that entail fact-intensive inquiry.   Applying the exception in § 187(2)(b) begins with a determination of whether the choice-of-law provision to be enforced would violate a fundamental policy of Ohio. Because the fee-shifting provision here conflicts with such a fundamental policy, a careful examination of the contacts of each state to the agreement was necessary to determine whether Ohio has a materially greater interest in the fee-shifting provision and, if so, whether its law would have applied absent a choice-of-law provision.   The pleadings do not provide sufficient facts to make a determination on these two issues, so the court should not have granted the motion for judgment on the pleadings.   Wise can

provide answers to many of the unresolved questions above, including where he paid his bills, where he signed or accepted the credit card, where he made his purchases, and where he decided not to repay. It is therefore possible that the district court could resolve the choice-of-law issue with an affidavit from him. However, the district court may also determine that the issue would benefit from limited discovery into the contacts of each state to the contract.[5]

### B. Ohio OCSPA Claim

Wise also appeals the dismissal of his claim under the OCSPA, which provides: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A); *see also* § 1345.03(A) (similarly protecting against "unconscionable" acts and practices). The statute defines "consumer transaction" to specifically exclude transactions between consumers and financial institutions, as defined at Ohio Rev. Code § 5725.01, with certain exceptions that do not apply here. Ohio Rev. Code § 1345.01(A). American Express is a "state chartered industrial loan bank chartered in the state of Utah," R. 1-1, PageID 10, and as such, meets the definition of a financial institution in Ohio Rev. Code § 5725.01(A)(3).

A debt collector is governed as a "supplier" by the OCSPA if the underlying debt was accrued during a consumer transaction. *See, e.g., Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir. 1999) (concerning debt collection for an unpaid plumbing bill); *Celebrezze v. United Research, Inc.*, 482 N.E.2d 1260, 1262 (Ohio Ct. App. 1984). However, Wise's allegations of unfair, deceptive, and unconscionable activity all arise in connection with one transaction: his credit card agreement with American Express. This transaction between a consumer and a financial institution falls outside Ohio's statutory definition of a "consumer transaction." There is some authority holding that the OSCPA applies to debt collection activities where the debt arises out of a transaction with a financial institution but is later sold to another entity that is not

---

[5]The defendants' argument that the *Noerr-Pennington* doctrine limits the application of the FDCPA to their activities is inapposite. The FDCPA specifically includes lawyers and litigation activities within its purview. *See Heintz v. Jenkins*, 514 U.S. 291 (1995). The defendants present no cases in which a court has applied the *Noerr-Pennington* doctrine to FDCPA claims. In fact, this circuit has already rejected *Noerr-Pennington* protection for false statements in a debt-collector's complaint, recognizing that the Petition Clause does not protect "sham petitions, baseless litigation, or petitions containing 'intentional and reckless falsehoods.'" *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir. 2009) (quoting *McDonald v. Smith*, 472 U.S. 479, 484 (1985)). The defendants attempt to distinguish *Hartman* by maintaining that there is a special protection for representations and demands made only in a complaint's prayer for relief. Even if such protection existed, it would not protect these defendants because Wise pled that they demanded attorney's fees in contexts outside the litigation.

a financial institution. *See Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1024 (S.D. Ohio 2007). In this case, however, the debt has always been held by American Express, a financial institution; its agents fall outside the scope of the OCSPA. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 412 (6th Cir. 1998); *Martin v. Gen. Motors Acceptance Corp.*, 825 N.E.2d 1138, 1147 (Ohio Ct. App. 2005). The claim under the OCSPA was properly dismissed.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of the state law claim, REVERSE the dismissal of Wise's federal claim, and REMAND for further proceedings in accordance with this opinion.